The State of Ohio, Appellee, *v.* Little, Appellant.

(No. 31650—Decided May 10, 1973.)

*Mr. John T. Corrigan,* prosecuting attorney, for appellee.

*Messrs. Mancino, Mancino & Mancino,* for appellant.

Jackson, J. On May 15, 1969, the defendant was indicted on five counts of pocket picking. On April 22, 1971, he entered pleas of guilty to counts one and two; the remaining three counts were nolled, and subsequently, he was sentenced to the Ohio Penitentiary on both counts, the sentences to run concurrently. Eight months later the defendant was granted leave to appeal, and he assigns two prejudicial errors by the trial court.

The appellant contends that the acceptance by the trial

court of a guilty plea in this case was unconstitutional because the record does not affirmatively show that the court had complied with "the mandatory guidelines as set forth by this court before the acceptance of a guilty plea;" *State* v. *Griffey* (1972), 29 Ohio App. 2d 246, and that said pleas of guilty were knowingly and intelligently made with full knowledge of all the consequences of such pleas. This argument has prompted this court to clarify its holding in *Griffey* and, as a result, we find this assignment of error without merit.

The transcript of proceedings discloses that the defendant appellant was indicted by the Grand Jury of Cuyahoga County charging him with five counts of pocket picking in violation of Section 2907.29 of the Ohio Revised Code. The defendant entered a not guilty plea to the indictment and on April 21, 1971, the defendant, accompanied by court appointed counsel, appeared in court and withdrew the previously entered plea of not guilty to the charges in the indictment, and entered guilty pleas to the first two counts. The court then proceeded to determine whether the constitutional rights of the defendant were known and understood by him, and whether his guilty pleas were understandingly and intelligently made. The court advised the defendant of his right to have a trial by jury (Tr. 7), his right to be either tried by a jury or a judge, together with the right to be confronted by his accusers, the right to have an attorney represent him, cross-examine all witnesses against him, and the right to call witnesses in his behalf (Tr. 8). The court further advised the appellant that he had the right to take the witness stand, if he wished, or refuse to take the witness stand (Tr. 8). After informing the defendant of the possible penalty of from one to five years in prison the court inquired of him whether he understood his rights and whether the facts as stated by the prosecutor were accurate (Tr. 8-9). The defendant stated that he did not know (Tr. 9). The court, in response, inquired of the defendant in the words of the indictment and asked him if he were familiar with the charges. The defendant stated that at the present time he did not remember

(Tr. 10). Thereafter, the appellant concurred in the facts of the case as explained by the prosecutor, and so stated to the court (Tr. 10). Finally, the court inquired of the defendant whether he wished to withdraw his plea of not guilty and plead guilty to counts one and two of the indictment. The defendant responded in the affirmative and entered said guilty pleas. Upon recommendation by the prosecutor, the court nolled the remaining three counts of the indictment.

Under the test set forth by the Supreme Court in *State* v. *Piacella* (1971), 27 Ohio St. 2d 92, we hold that the appellant's plea was voluntarily and intelligently made. It is true that in *Griffey* this court suggested a fifteen point guideline for insuring affirmative demonstration in the record that a plea of guilty was in compliance with constitutional requirements. It is also evident in the case at bar that the trial court did not comply with all fifteen criteria suggested therein. However, this court has recently held that *Griffey* is not to be applied retroactively. *State* v. *Epler*, No. 30922 (June 29, 1972). More importantly, this court stated in *Epler* that ". . . Substance rather than form will control in determining whether the guilty plea was voluntarily made when the court accepted the plea."

In other words, *Griffey* did not hold that the record must contain detailed waivers of all constitutional rights forfeited by a plea of guilty, much less was it intended to make the fifteen point guideline mandatory in all guilty pleas. Nor did *Griffey* imply that a plea accepted in only partial compliance with the guidelines is inherently involuntary and unintelligent.[1] Our experience is that the more constricted the inquiry into the circumstances surrounding the guilty plea, the greater the likelihood that the plea will be found constitutionally infirm upon review. It was our purpose in *Griffey* to minimize that risk by suggesting a battery of relevant questions by which the court may explore to the fullest practical extent the defendant's under-

[1]Cf. *Stinson* v. *Turner* (10th Cir. 1973), 12 Cr. L. Rep; *Wade* v. *Coiner* (4th Cir., 1972), 468 F. 2d 1059, 1061; *United States* v. *Frontero* (5th Cir. 1971), 452 F. 2d 406, 415.

standing of his rights in the criminal process, his willingness to plead guilty, and his awareness of the consequences.

The appellant, after entering his guilty plea, moved the court to give credit in his sentence for the time spent in jail prior to imposition of sentence. This motion was overruled on the grounds that the court was not empowered under statutory law to give credit for "dead time." The defendant contends that the overruling of his motion by the trial court was error. He further charges that a defendant in a criminal case who serves time in jail prior to a verdict or plea of guilty is entitled to credit upon his ultimate sentence for that period of time spent in jail, and a denial of a request for credit results in the deprivation of his constitutional rights of due process of law and equal protection of the laws, and that such denial subjects him to multiple punishment for the same offense. We find this assignment of error without merit.

In passing on this assignment we must consider several recent court decisions and a newly enacted amendment to the Revised Code. First, in *Workman* v. *Cardwell* (N. D. Ohio 1972), 338 F. Supp. 893, a federal court in granting a writ of habeas corpus to an Ohio inmate declared that the equal protection clause "requires that *all* time spent in any jail prior to trial and commitment by prisoners who are unable to make bail because of indigency must be credited to his sentence." Accordingly, that court held that R. C. 2967.191 was unconstitutional since it did not allow a sentencing court to order that such constitutionally mandated credit be given.[2] Less than two months after this decision, the Common Pleas Court for Cuyahoga County adopted the *Workman* rationale in ordering that credit

[2]This statute provided:

"The adult parole authority upon proper certification by the trial judge of time served, in the journal entry of sentence and upon recommendation of the trial judge may reduce the minimum sentence of a prisoner by the number of days the prisoner was confined at the county jail or workhouse or confined at a state facility for a pre-sentence examination as provided in section 2947.25 of the Revised Code after a verdict or plea of guilty and before commitment."

This statute has since been amended. See note 5 *infra*.

be given against the term of a prisoner's sentence to off-set the time he was confined to jail prior to conviction. *Mallory* v. *State* (C. P. Cuy. Co., 1972), 281 N. E. 2d 860. However, the Sixth Circuit Court of Appeals subsequently vacated that part of the District Court's ruling in *Workman* v. *Cardwell, supra,* which ordered credit for pretrial detention. *Workman* v. *Cardwell* (6th Cir., Dec. 8, 1972), Nos. 72-1426-27. The Circuit Court noted that there were other adequate grounds for sustaining the writ of habeas corpus, adding that "the District Court's determination respecting the constitutionality of Ohio Revised Code, Section 2967.191 . . . stands at best as pure dictum in that the statute in no way relates to the court's holding respecting credit for pretrial detention." Id. at 4. In the light of the Circuit Court's ruling, we find the decision of the District Court, as well as that of the Common Pleas Court, has little precedential value, despite their laudable efforts to protect the rights of prisoners.

The second federal decision, however, does command greater import. In *White* v. *Gilligan* (S. D. Ohio, 1972), 351 F. Supp. 1012, a three-judge District Court was convened to pass on the constitutionality of the Ohio statutory scheme governing the crediting of time in jail prior to conviction ("dead time"). Ohio statutes do not allow for such credit to be given against the statutory fixed sentence meted out to convicted prisoners. Thus, where a prisoner is unable to post bail prior to trial he faces the possibility of ultimately spending more time in jail than the maximum statutory sentence. The court held that this sentencing scheme violated the equal protection clause, and enjoined the implementation of the relevant statutes. In other words, incarceration time prior to conviction must now be credited against the sentence subsequently imposed. The court further held that "dead time" was required to be considered in awarding "good time" for faithful observance of the rules of the place of confinement. "Good time," of course, has an important bearing on the sentence of a prisoner since it results in earlier eligibility for parole consideration. Thus, *Gilligan* would require the "dead time"

be used in calculating minimum time for eligibility for parole, assuming good behavior by the prisoner. But it must be noted that the *Gilligan* court was careful to stop short of requiring that "dead time" be automatically translated into "good time" credit. The court left untouched the discretionary powers of the parole authorities to determine whether a prisoner has properly conducted himself during his confinement,[3] except that now the parole authorities must take cognizance of the preconviction period of confinement.[4]

Within a few weeks after the announcement of *Gilligan,* the General Assembly passed an amendment to R. C. 2967.191.[5] This new provision, which became effective

---

[3]This discretion is to be distinguished from the more unrestricted discretionary power of the Parole Board to grant parole once a prisoner becomes eligible for consideration.

[4]We note, however, that since *Gilligan* the United States Supreme Court has decided *McGinnis* v. *Royster* (1973), 35 L. Ed. 2d 282. The Court reviewed a New York statute that expressly provided, in calculating a prisoner's minimum parole date, credit for good time would not be allowed with respect to pre-sentence time served in a county jail prior to transfer to state prison. The Court refused to find that this statute violated the equal protection clause since there was a rational basis for not awarding good time for incarceration in the county jail. "Good time" is awarded on the basis of the state's evaluation of an inmate's progress toward rehabilitation; since a county jail has no systemic rehabilitative program and a prisoner's conduct is not observed and evaluated by state prison officials during this confinement, it is reasonable not to award "good time" credit for such pre-trial detention. Whether *McGinnis* implicitly modifies the *Gilligan* holding with respect to "good time" credit we need not decide in the light of our disposition of appellant's assignment of error.

[5]"Sec. 2967.191. The adult parole authority shall reduce the minimum and maximum sentence of a prisoner by the total number of days the prisoner was confined for any reason arising out of the offense for which he was convicted and sentenced, including confinement in lieu of bail while awaiting trial, confinement for examination to determine his sanity, and confinement while awaiting transportation to the place where he is to serve his sentence. The adult parole authority shall also reduce the minimum and maximum sentence of a prisoner by the number of days he is confined for a pre-sentence examination as provided in section 2947.25 of the Revised Code after a verdict or plea of guilty and before commitment."

March 23, 1973, would seem to go beyond the requirements of *Gilligan*. The Parole Authority must reduce not only the maximum sentence of a prisoner but also the minimum sentence as well, by the total number of days of confinement, without apparent regard to whether a prisoner's preconviction behavior in jail was "good."

The question remains whether a sentencing court may exercise powers heretofore withheld by the legislature[e] for ordering adjustments to indeterminate sentences. We conclude that it cannot. The *Gilligan* opinion, which was directed against the executive branch of the state government under whose jurisdiction prisoners come after sentencing, in no way intimated that a court has authority to order credits and limitations to sentences. Moreover, R. C. 2967.191, as amended, continues to place the sole responsibility for such adjustments upon the parole authority. Consequently, it was not error for the trial court below, as the sentencing court, to refuse to order the appellant's preconviction bail time credited against his sentence. Appellant's request for credit should be directed to the parole authorities. Only in the event of failure by the parole authorities to comply with amended R. C. 2967.191 and not provide appropriate credits against the sentence of the defendant would he be justified in seeking extraordinary relief from the courts. The decision of the trial court is therefore affirmed.

*Judgment affirmed.*

MANOS, C. J., and SILBERT, J., concur.

---

[e]R. C. 5145.01; see *Colegrove* v. *Burns* (1964), 174 Ohio St. 436.