THE STATE OF OHIO, APPELLANT, *v.* GRIFFEY, APPELLEE.

[Cite as State v. Griffey (1973), 35 Ohio St. 2d 101.]

102

(No. 72-409—Decided July 3, 1973.)

104

*Mr. John T. Corrigan*, prosecuting attorney, and *Mr. Sumner Canary*, for appellant.

*Mr. Harry E. Youtt*, for appellee.

CORRIGAN, J.  The action of the Court of Appeals in reversing the Common Pleas Court for accepting the defendant's plea of guilty can only have had its provenance in a spin-out of the benevolent, but cautionary, spirit of Douglas, J., when he opined, in *Boykin* v. *Alabama* (1969), 395 U. S. 238, 243:

"What is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence.  When the judge discharges that function, he leaves a record adequate for any review that may be later sought * * * and forestalls the spin-off of collateral proceedings that seek to probe murky memories."

To keep our case in proper perspective, it should first be pointed out that the defendant there, Boykin, a Negro, had five indictments returned against him for common-law robbery, an offense punishable by death in Alabama.  In a period of a fortnight, a series of armed robberies had occurred in Mobile, Alabama, and the victims in each case were local shopkeepers open at night who were forced by a gunman to hand over money.  While robbing one grocery store, the assailant fired his gun once, sending a bullet through a door into the ceiling.  A few days earlier, in a drugstore, the robber shot a customer in the leg.  Boykin was indigent and the court appointed counsel to represent him.  Three days later, at his arraignment, Boykin pleaded guilty to all five indictments.  So far as the record shows,

the judge asked no questions of Boykin and Boykin did not address the court. It is a silent record in those respects, and a reviewing court cannot presume a waiver of any constitutional rights from the record. Alabama law provides that, when a defendant pleads guilty, the court must cause the punishment to be determined by a jury. Such a trial was had, Boykin did not take the stand, and the jury sentenced him to death on each of the five indictments. There was nothing to indicate that he had a prior criminal record.

Contrast that picture with the proceedings in the instant case, where, when the plea was taken, the record breathes the solicitude of the court for defendant's constitutional rights. Griffey, represented by competent trial counsel, whom he had retained, benefited by a plea bargaining process which culminated in the following colloquy between Griffey and the careful trial judge who, on September 9, 1969, accepted his plea of guilty to the one count of uttering:

"Mr. Carson [assistant prosecuting attorney]: John W. Griffey, your Honor.

"If it please the court, this is case No. 92,504, State of Ohio vs. John W. Griffey.

"The defendant, your Honor, stands before this court charged under a two-count indictment for violation of Revised Code 2913.01. The defendant is present in court with his attorney, Mr. James Carnes; and it is my understanding that the defendant is desirous of withdrawing any and all not guilty pleas heretofore entered and enter a plea of guilty to the second count of the indictment.

"If that plea is forthcoming, it is the recommendation of the prosecutor's office that the first count of the indictmen be nolled.

"The Court: 2913.01 is forgery. Mr. Carnes, is that your understanding? Answer just yes or no.

"Mr. Carnes: Yes, it is.

"The Court: Mr. Griffey, how old are you?

"The Defendant: Thirty-one.

"The Court: What work do you do?

"The Defendant: I work in a factory.

"The Court: How long?

"The Defendant: Three and a half years.

"The Court: Married man?

"The Defendant: Married, yes, sir.

"The Court: How much schooling have you had?

"The Defendant: High school.

"The Court: Has counsel, Mr. Carnes, explained to you the facts and circumstances surrounding your pleading guilty to the second count of the indictment?

"The Defendant: Yes, sir.

"The Court: You understand, sir, that you have a right to trial by jury?

"The Defendant: Yes.

"The Court: You can waive a jury and have your case tried to this court, you understand that?

"The Defendant: Yes, sir.

"The Court: You understand that the prosecutor is obligated to prove your guilt beyond a reasonable doubt?

"The Defendant: Yes, sir.

"The Court: You understand the crime to which you are pleading guilty is a felony and you may be incarcerated?

"The Defendant: Yes, sir.

"The Court: May I presume that you are entering this plea of your own free will?

"The Defendant: Yes, sir.

"The Court: Nobody has made you any promises or offered you any inducements in pleading guilty?

"The Defendant: No, sir.

"The Court: I presume, Mr. Griffey, that is the case?

"The Defendant: Yes, sir.

"The Court: You are not on probation or parole?

"The Defendant: No, sir.

"The Court: Understanding all of these things is it still your wish to plead guilty?

"The Defendant: Yes, sir.

"The Court: Case No. 92,504, State of Ohio vs. John

108

W. Griffey, how do you plead to the charge of uttering a forged instrument as contained in the second count of this indictment?

"The Defendant: Guilty.

"The Court: The court will accept your plea of guilty to the second count of the indictment.

"Mr. Carson, what is your pleasure as to the first count?

"Mr. Carson: It is the recommendation of the prosecutor's office that it be nolled.

"The Court: The court will accept the recommendation of the prosecutor at this time and the first count of the indictment will be nolled.

"Mr. Carnes: Before the court passes sentence in this matter, I respectfully request that the defendant be referred to the probation department for a presentence report and that the defendant be allowed to continue on the same bond.

"I am sure that the defendant will make himself available to the probation department and the court at any time in the future.

"The Court: I will grant your request, sir.

"The record will reflect that the defendant is referred to the probation department for a presentence report. The defendant will be released on the same bond.

"Mr. Carnes: Thank you."

It is our conclusion that this dialogue clearly establishes that the defendant's guilty plea was voluntarily, knowingly and intelligently made, and that this seasoned defendant understood the nature of the charge against him and the consequences of his entering a plea of guilty. In making this determination, we look to the substance and not to the mere form of the record.

In the face of the history of this case, which we have set forth in detail, and the record before us, for the Court of Appeals to conclude that Griffey's plea of guilty was involuntarily entered and that he did not understand the nature of the charge against him and the full consequenc-

es of his entering such a plea, seems to point up an abandonment of reality and, as the current expression has it, "to kick the gong around" on a fanciful excursion of conjecture. As something more than a first offender in this "paper hanging" guild of criminality, Griffey was anything but a "Boykin" pleading guilty to five armed robbery charges in Mobile, Alabama.

On the contrary, Griffey's plea of guilty was manifestly elicited by the trial judge with the maximum concern for the constitutional rights of Griffey. It should be observed at this point that the trial court is not engaged in a scholastic exercise but in the practical administration of justice. Both the prosecution and the defense in this case are entitled to fair and impartial treatment. The path to a conviction of the defendant, by trial or by the acceptance of a plea of guilty, was not intended to be an obstacle course; justice is not a game. Conversely, a man's liberty may be taken from him only when his guilt is established beyond a reasonable doubt, by trial or plea of guilty, and even then only when this is done without violating his constitutional rights. In that constitutional process, it is equally important that the trial judge, in the acceptance of a guilty plea in a criminal case, exercise the utmost solicitude for the rights of the victim of such criminality as that of Griffey's, and certainly for the rights of other citizens to be protected from his criminal proclivities in the future. It is also of primal importance that Griffey be suitably punished for his lawlessness; that an effort be made to rehabilitate him; and that other potential offenders be deterred from engaging in such criminal conduct by the court's handling of the instant case.

Some point is sought to be made in Griffey's favor as a result of what the United States Supreme Court further said in *Boykin, supra* (395 U. S. 238), at page 243:

"Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First, is the privilege against self-incrimination guaranteed by the Fifth Amendment and

applicable to the states by reason of the Fourteenth. * * * Second, is the right to trial by jury. * * * Third, is the right to confront one's accusers. * * * We cannot presume a waiver of those three important rights from a silent record.''

Contrariwise to the record in *Boykin,* the transcript in this case is vividly expressive of proper judicial solicitude, under the Douglas or any other standard, for safeguarding the constitutional rights of Griffey before accepting his guilty plea.

Griffey's counsel had explained to him the facts and circumstances involved in his plea of guilty to the second count of the indictment.

Griffey understood that he had a right to a jury trial.

Griffey understood that he could waive a jury trial and have his case tried to the court.

Griffey understood that the state had to prove his guilt beyond a reasonable doubt.

Griffey understood that the crime of uttering a forged check was a felony.

Griffey admitted that he was pleading guilty of his own free will, and that, in entering this guilty plea, no inducements or promises had been made to him.

Griffey had already confronted his accusers once—at the preliminary hearing—and knew their identity.

The trial judge, in accepting the plea of guilty, did not violate defendant's constitutional rights. Subsequent to the trial in the instant case, in similar circumstances, this court, in *State* v. *Piacella* (1971), 27 Ohio St. 2d 92, held:

''Where the record affirmatively discloses that: (1) defendant's guilty plea was not the result of coercion, deception or intimidation; (2) counsel was present at the time of the plea; (3) counsel's advice was competent in light of the circumstances surrounding the indictment; (4) the plea was made with the understanding of the nature of the charges; and (5) defendant was motivated either by a desire to seek a lesser penalty or a fear of the consequences of a jury trial, or both, the guilty plea has been voluntarily and intelligently made.''

The Court of Appeals must be reversed, but, in so doing, we are of the mind that a salutary purpose will be served by charging the trial judges of Ohio that, in connection with the acceptance of a plea of guilty to a felony, Rule 11 of the Ohio Rules of Criminal Procedure, effective July 1, 1973,* must be scrupulously adhered to, and, in ad-

---

*Rule 11 of the Ohio Rules of Criminal Procedure, effective July 1, 1973:

"(A) Pleas. A defendant may plead not guilty, not guilty by reason of insanity, guilty or, with the consent of the court, no contest. A plea of not guilty by reason of insanity shall be made in writing by either the defendant or his attorney. All other pleas may be made orally. The pleas of not guilty and not guilty by reason of insanity may be joined. If a defendant refuses to plead, the court shall enter a plea of not guilty on behalf of the defendant.

"(B) Effect of guilty or no contest pleas. With reference to the offense or offenses to which the plea is entered:

"(1) The plea of guilty is a complete admission of the defendant's guilt.

"(2) The plea of no contest is not an admission of defendant's guilt, but is an admission of the truth of the facts alleged in the indictment, information, or complaint and such plea or admission shall not be used against the defendant in any subsequent civil or criminal proceeding.

"(3) When a plea of guilty or no contest is accepted pursuant to this rule, the court shall, except as provided in subsections (C)(3) and (4), proceed with sentencing under Rule 32.

"(C) Pleas of guilty and no contest in felony cases.

"(1) Where in a felony case the defendant is unrepresented by counsel the court shall not accept a plea of guilty or no contest unless the defendant, after being readvised that he has the right to be represented by retained counsel, or pursuant to Rule 44 by appointed counsel, waives this right.

"(2) In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept such plea without first addressing the defendant personally and:

"(a) Determining that he is making the plea voluntarily, with understanding of the nature of the charge and of the maximum penalty involved, and, if applicable, that he is not eligible for probation.

"(b) Informing him of and determining that he understands the effect of his plea of guilty or no contest, and that the court upon acceptance of the plea may proceed with judgment and sentence.

"(c) Informing him and determining that he understands that by his plea he is waiving his rights to jury trial, to confront witnesses

dition, the American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Pleas of Guilty (Approved Draft, 1968) should serve as a guide.

---

against him, to have compulsory process for obtaining witnesses in his favor, and to require the state to prove his guilt beyond a reasonable doubt at a trial at which he cannot be compelled to testify against himself.

"(3) Until January 1, 1974, where a defendant pleads guilty or no contest to a capital offense a court composed of three judges shall examine the witnesses, determine the degree of crime and pronounce sentence accordingly. In all other cases the court need not take testimony upon a plea of guilty or no contest.

"(4) With respect to aggravated murder committed on and after January 1, 1974, the defendant shall plead separately to the charge and to each specification, if any. A plea of guilty or no contest to the charge waives the defendant's right to a jury trial, and before accepting such plea the court shall so advise the defendant and determine that he understands the consequences of such plea.

"If the indictment contains no specification, and a plea of guilty or no contest to the charge is accepted, the court shall impose the sentence provided by law.

"If the indictment contains one or more specifications, and a plea of guilty or no contest to the charge is accepted, the court may dismiss the specifications and impose sentence accordingly, in the interests of justice.

"If the indictment contains one or more specifications which are not dismissed upon acceptance of a plea of guilty or no contest to the charge, or if pleas of guilty or no contest to both the charge and one or more specifications are accepted, a court composed of three judges shall: (a) determine whether the offense was aggravated murder or a lesser offense; and (b) if the offense is determined to have been a lesser offense, impose sentence accordingly; or (c) if the offense is determined to have been aggravated murder, proceed as provided by law to determine the presence or absence of the specified aggravating circumstances and of mitigating circumstances, and impose sentence accordingly.

"(D) Misdemeanor cases involving serious offenses. In misdemeanor cases involving serious offenses the court may refuse to accept a plea of guilty or no contest, and shall not accept such plea without first addressing the defendant personally and informing him of the effect of the pleas of guilty, no contest, and not guilty and determining that he is making the plea voluntarily. Where the defendant is unrepresented by counsel the court shall not accept a plea of guilty or no con-

It should be emphasized, although, from the record, it is not inherent in this case, that: "The trial judge should not participate in plea discussions." American Bar Association Project, *supra,* Section 3.3(a).

*Judgment reversed.*

O'NEILL, C. J., HERBERT, STERN, CELEBREZZE, W. BROWN and P. BROWN, JJ., concur.

---

test unless the defendant, after being readvised that he has the right to be represented by retained counsel, or pursuant to Rule 44 by appointed counsel, waives this right.

"(E) Misdemeanor cases involving petty offenses. In misdemeanor cases involving petty offenses the court may refuse to accept a plea of guilty or no contest, and shall not accept such pleas without first informing the defendant of the effect of the plea of guilty, no contest, and not guilty.

"The counsel provisions of Rule 44(B) and (C) apply to this subdivision.

"(F) Negotiated plea in felony cases. When, in felony cases, a negotiated plea of guilty or no contest to one or more offenses charged or to one or more other or lesser offenses is offered, the underlying agreement upon which the plea is based shall be stated on the record in open court.

"(G) Refusal of court to accept plea. If the court refuses to accept a plea of guilty or no contest, the court shall enter a plea of not guilty on behalf of the defendant. In such cases neither plea shall be admissible in evidence nor be the subject of comment by the prosecuting attorney or court.

"(H) Defense of insanity. The defense of not guilty by reason of insanity must be pleaded at the time of arraignment, except that the court for good cause shown shall permit such a plea to be entered at any time before trial. A defendant who does not plead not guilty by reason of insanity is conclusively presumed to have been sane at the time of the commission of the offense charged."