## DAVIS *v*. STATE OF MARYLAND

[No. 114, September Term, 1975.]

*Decided July 7, 1976.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Arthur A. DeLano, Jr., Assistant Public Defender*, with whom were *Alan H. Murrell, Public Defender*, and *Dennis M. Henderson, Assistant Public Defender*, on the brief, for appellant.

*Albert Gallatin Warfield, III, Assistant Attorney General*, with whom were *Francis B. Burch, Attorney General*, and *Clarence W. Sharp, Assistant Attorney General*, on the brief, for appellee.

DIGGES, J., delivered the opinion of the Court. MURPHY, C. J., and ELDRIDGE, J., concur in the judgment and MURPHY, C. J., filed a concurring opinion in which ELDRIDGE, J., concurs at page 119 *infra*.

Generally speaking, this case involves the question of what information the due process clause of the Fourteenth Amendment of the United States Constitution requires state trial courts to obtain from defendants who plead guilty to criminal charges in order to ensure that the record reflects that they do so voluntarily and intelligently. More precisely, we are faced here with the issue of whether that provision of the Constitution, with special reference to its interpretation in *Boykin v. Alabama*, 395 U. S. 238, 242-44, 89 S. Ct. 1709, 1711-12, 23 L.Ed.2d 274 (1969), obliges state trial judges, on the record, to both specifically inform such defendants of their privilege against compulsory self-incrimination and obtain from them a proper waiver of this right before accepting a guilty plea. Because we think no individual reference to or waiver of that right is required, and because we think the record in this case establishes that the confession of guilt made by the petitioner, Lloyd Franklin Davis, Jr., was entered voluntarily and intelligently, we shall affirm his conviction.

The factual background of this case merits only brief recitation as it is undisputed and relatively simple. After being charged with nine counts of burglary, pleading not guilty and requesting a jury trial, the petitioner was scheduled to be tried in the Circuit Court for Allegany County (Naughton, J.) on April 22, 1974. On that day, following plea negotiations, counsel for Davis informed the court that the petitioner wished to enter pleas of guilty to three of the counts; whereupon the State's Attorney replied that if the pleas were accepted by the court the prosecution would stet the remaining six counts. Judge Naughton then engaged in the following colloquy with Davis:

"BY THE COURT: Stand please, Mr. Davis. Mr. Davis, in order to make certain that you are entering your pleas of guilty to these three

counts willingly, freely, knowingly and with some degree of intelligence, it is necessary that I ask you a few questions and determine that fact.

Now would you please state your full name?

MR. DAVIS: Lloyd Franklin Davis, Jr.

BY THE COURT: Are you able to hear my questions?

MR. DAVIS: Yes sir.

BY THE COURT: And are you now under the influence of any alcohol, drugs, narcotics or pills of any kind?

MR. DAVIS: No sir.

BY THE COURT: Are you represented by an attorney in this case, and if so is he present with you at this time?

MR. DAVIS: Yes sir.

BY THE COURT: And what is his name?

MR. DAVIS: Mr. Robb.

BY THE COURT: Now have you been furnished with a copy of the information filed in this case?

MR. DAVIS: Yes sir.

BY THE COURT: And have you read the information and discussed it with your attorney?

MR. DAVIS: Yes sir.

BY THE COURT: Do you fully understand the three charges to which you have entered pleas of guilty?

MR. DAVIS: Yes sir.

BY THE COURT: Now the charges that you've entered pleas of guilty to are burglary, three counts of burglary, each being a felony for which this Court could give you twenty years

in prison on each charge, or a total of sixty years. Do you understand that, Mr. Davis?

MR. DAVIS: Yes sir.

BY THE COURT: Now has anyone promised you that I would go easy on you if you entered pleas of guilty?

MR. DAVIS: No sir.

BY THE COURT: Any promises or threats been made to induce you to plead guilty?

MR. DAVIS: No sir.

BY THE COURT: You understand that if you plead not guilty that at the trial the State would have to produce witnesses against you in open court, and that you would have the right through your attorney to cross-examine all of them?

MR. DAVIS: Yes sir.

BY THE COURT: *Do you also understand if you plead not guilty you would not have to take the witness stand in your own defense unless you desired to do so, and if you did not take the stand the prosecuting attorney may not comment or make reference to your failure to testify?*

MR. DAVIS: Yes sir.

BY THE COURT: Do you understand that? Do you also understand that if you plead not guilty that you have the right to trial by a Jury or by the Court without a Jury, the choice would be yours? At the trial you would be presumed innocent until proved guilty beyond a reasonable doubt.

MR. DAVIS: Yes sir.

BY THE COURT: Now I have recited to you certain constitutional rights which you have as a defendant in a criminal case. Do you understand that by pleading guilty you are in fact waiving these rights?

MR. DAVIS: Yes sir." (Emphasis added.)

Having by this inquiry ascertained to his satisfaction that the petitioner was acting voluntarily and intelligently, Judge Naughton accepted the defendant's guilty plea; subsequently, the court sentenced Davis to prison for three consecutive five-year terms. On appeal these convictions were affirmed by a divided panel of the Court of Special Appeals. *Davis v. State*, 28 Md. App. 50, 343 A. 2d 550 (1975). We granted certiorari.

Davis asserts — relying on *Boykin v. Alabama, supra,* and four decisions of the Court of Special Appeals which interpret that case to hold that the due process clause of the Fourteenth Amendment requires state trial judges to specifically inform defendants of the essential elements of their privilege against compulsory self-incrimination before accepting their guilty pleas — that the information imparted to him "was patently inadequate" to fulfill this requirement. *See English v. State*, 16 Md. App. 439, 298 A. 2d 464, *cert. granted*, 268 Md. 748 (1973), *cert. dismissed as improvidently granted,* July 3, 1973; *Williams v. State*, 10 Md. App. 570, 271 A. 2d 777 (1970), *cert. denied*, 261 Md. 730 (1971); *McCall v. State*, 9 Md. App. 191, 263 A. 2d 19, *cert. denied*, 258 Md. 729 (1970); *Silverberg v. Warden*, 7 Md. App. 657, 256 A. 2d 821 (1969). Specifically, and as he phrases it, the petitioner points out that he "was not advised that if he elected to stand trial on a plea of not guilty he could not be compelled by the State to testify against himself," and "he was not apprised that if he elected to exercise his privilege against self-incrimination the trier of fact could draw no inference of guilt from his failure to testify," but rather, he was only "informed that if he pleaded not guilty he could refrain from testifying *in his own defense* and that *the prosecutor could not comment* on his failure to testify." Consequently, Davis reasons that since "the record failed to affirmatively show [he] had an intelligent understanding of this privilege and waived it in the constitutional sense," his guilty plea cannot stand. On the other hand, the State asserts that the trial court is not required to adhere to any particular litany when interrogating such a defendant, but instead the only requirement is that the record demonstrate

that the accused entered his confession of guilt voluntarily and intelligently. In order for us to resolve this controversy, it will perhaps be helpful if we briefly review the development of the prerequisites for the acceptance of guilty pleas.

This Court first embraced a standard for the acceptance of confessions of guilt in criminal causes in *Lowe v. State*, 111 Md. 1, 15, 73 A. 637 (1909), wherein we quoted with approval the following passage from 19 Encyclopaedia of Pleading and Practice 437:

> "[The trial court must see to it that the guilty plea] is made by a person of competent intelligence, freely and voluntarily, and with a full understanding of its nature and effect, and of the facts on which it is founded." (Emphasis deleted.)

In *Lowe* our predecessors held that the judgment of conviction was improperly entered because the record did not reflect compliance with this standard. *Lowe v. State, supra,* 111 Md. at 15-20. In the cases which followed, however, this Court was more reluctant to make a finding on a barren record that a guilty plea had not been properly entered. Thus, when the facts before the Court of Appeals were insufficient for a determination of the issue, *see State v. Darling*, 130 Md. 251, 254, 100 A. 91 (1917); *cf. State v. Stafford*, 160 Md. 385, 390, 153 A. 77 (1931), or when the record merely disclosed that the accused was represented by counsel and was capable of participating in his own defense, the acceptance of the confession of guilt was sustained "almost as a matter of course." *James v. State*, 242 Md. 424, 428, 219 A. 2d 17 (1966); *see Cooper v. State*, 231 Md. 248, 253, 189 A. 2d 620 (1963); *Brown v. State*, 223 Md. 401, 164 A. 2d 722 (1960) (per curiam); *Jones v. State*, 221 Md. 141, 144, 156 A. 2d 421 (1959). Those cases reflect the views of this Court until 1966, when in two cases, *James v. State, supra,* and *Owens v. State*, 243 Md. 719, 222 A. 2d 838 (1966) (per curiam), we implied that the voluntary and intelligent nature of guilty pleas need be clearly established in the trial

court before they are accepted.[1] Until now, we have had no occasion to address these issues since *James* and *Owens.*

Over this same span of time the courts of our sister states were confronted with the identical problem and developed an extensive body of law with respect to the requirements for the acceptance of guilty pleas. *See In re Tahl*, 1 Cal. 3d 122, 126-27, 460 P. 2d 449, 452, 81 Cal. Rptr. 577, 580 (1969), *cert. denied*, 398 U. S. 911 (1970). By statute, court rule or case law, a number of these states required, in general, that before a trial court accepted a confession of guilt it had to be convinced that the plea was offered freely and voluntarily, and that the defendant understood the nature of the charge, the consequences of his plea and that he was waiving various constitutional rights. *Id. See, e.g., People v. Mendez*, 27 Cal. 2d 20, 161 P. 2d 929, 930 (1945); *People v. Doyle*, 20 Ill. 2d 163, 169 N.E.2d 250, 251-52 (1960); *People v. Bumpus*, 355 Mich. 374, 94 N.W.2d 854, 855, 857 (1959); *Rudolph v. State*, 32 Okla. Crim. 265, 240 P. 761, 762-63 (1925). *See generally* Annot., 97 A.L.R.2d 549 (1964). In order to determine whether there had been compliance with the applicable standard, courts usually looked to the totality of the circumstances as reflected in the entire record. *In re Tahl, supra*, 1 Cal. 3d at 127, 460 P. 2d at 452, 81 Cal. Rptr. at 580. *See, e.g., People v. Doyle, supra*, 169 N.E.2d at 252; *People v. Bumpus, supra.*

In 1969 the Supreme Court of the United States demonstrated a keen interest in the prerequisites for a trial court's acceptance of guilty pleas — first with regard to federal trial courts in *McCarthy v. United States*, 394 U. S. 459, 89 S. Ct. 1166, 22 L.Ed.2d 418 (1969), and then with respect to state trial courts in *Boykin v. Alabama*, 395 U. S. 238, 89 S. Ct. 1709, 23 L.Ed.2d 274 (1969). In *McCarthy* the Supreme Court held that Rule 11 of the Federal Rules of Criminal Procedure required that a confession of guilt be

---

1. We hasten to add that these cases specifically rejected any intention to require the trial judge to follow any set ritual when accepting a guilty plea. *See* Owens v. State, 243 Md. 719, 721, 222 A. 2d 838 (1966) (per curiam); James v. State, 242 Md. 424, 428, 219 A. 2d 17 (1966).

set aside because the district judge, contrary to the dictates of the rule, accepted the guilty plea without addressing the defendant personally to determine whether he understood the nature of the charge and without ascertaining that there was a factual basis for the plea. 394 U. S. at 463-72, 89 S. Ct. at 1169-74. In the course of so holding, Chief Justice Warren, for the Court, noted that

> "A defendant who enters [a guilty plea] simultaneously waives several constitutional rights, including his privilege against compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers. For this waiver to be valid under the Due Process Clause, it must be 'an intentional relinquishment or abandonment of a known right or privilege.' Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Consequently, if a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void. Moreover, because a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts." *McCarthy v. United States, supra*, 394 U. S. at 466, 89 S. Ct. at 1171 (footnotes omitted).

Two months later, in *Boykin*, the Supreme Court addressed the question of what minimum requirements are imposed by the due process clause of the Fourteenth Amendment with regard to the acceptance of guilty pleas in state courts. The defendant in *Boykin* pled guilty to five indictments for robbery; however, so far as the appeal record indicated, the trial judge asked no questions of the accused concerning his plea, nor did the defendant address the court. Pursuant to the Alabama procedure calling for a jury determination of punishment, the accused was, as then permitted by that state's law, sentenced to death on each of the five indictments. Justice Douglas, speaking for the

majority, found reversible error because the record did not affirmatively disclose that the defendant voluntarily and understandingly entered his pleas of guilty. *Id.* at 242, 244, 89 S. Ct. at 1711, 1713. If that, the strict holding of the case, had been all that *Boykin* contained, there is little chance the opinion would have led anyone to conclude that it had substantially altered the procedures for the acceptance of guilty pleas which then existed in most state courts. However, the opinion also contained the following paragraph, drawn from *McCarthy*, which has led some to conclude that *Boykin* had a much broader meaning:

> "Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First, is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the States by reason of the Fourteenth. Second, is the right to trial by jury. Third, is the right to confront one's accusers. We cannot presume a waiver of these three important federal rights from a silent record." *Id.* at 243, 89 S. Ct. at 1712 (citations omitted). *See in addition id.* at 243 n. 5, 89 S. Ct. at 1712 n. 5.

Justice Harlan, joined by Justice Black, dissented in *Boykin* on the ground that the majority had taken a wholly unprecedented and unfounded step:

> "So far as one can make out from the Court's opinion, what is now in effect being held is that the prophylactic procedures of [Rule 11 of the Federal Rules of Criminal Procedure] are substantially applicable to the States as a matter of federal constitutional due process." *Id.* at 247, 89 S. Ct. at 1714.

The Supreme Court of California, about five months later, in the case of *In re Tahl*, 1 Cal. 3d 122, 460 P. 2d 449, 81 Cal. Rptr. 577 (1969), *cert. denied*, 398 U. S. 911 (1970), interpreted *Boykin* to require state trial courts to obtain

from defendants who plead guilty a specific on-the-record waiver of the three constitutional rights Justice Douglas had enumerated. The Court explained its position as follows:

> "[E]ach of the three rights mentioned — self-incrimination, confrontation, and jury trial — must be specifically and expressly enumerated for the benefit of and waived by the accused prior to acceptance of his guilty plea. . . . While the *Boykin* text contains no such requirement in express terms, we believe it is not only a fair inference from the opinion — especially in light of the court's references therein to the recently strengthened federal guidelines (see McCarthy v. United States (1969) supra, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418) — but it is the only realistic means of assuring that 'the judge * * * leaves a record adequate for any review that may be later sought.'
>
> "This does not require the recitation of a formula by rote or the spelling out of every detail by the trial court. It does mean that the record must contain *on its face* direct evidence that the accused was aware, or made aware, of his right to confrontation, to a jury trial, and against self-incrimination, as well as the nature of the charge and the consequences of his plea. Each must be enumerated and responses elicited from the person of the defendant. Because mere inference is no longer sufficient, the presence of an attorney cannot alone satisfy these requirements; as noted, the defendant in *Boykin* was represented by counsel." *Id.* at 132, 460 P. 2d at 456, 81 Cal. Rptr. at 584 (footnote omitted).

A number of other courts quickly followed California's lead. *See, e.g., Purvis v. Connell,* 227 Ga. 764, 182 S.E.2d 892, 894 (1971); *State v. Abodeely,* 179 N.W.2d 347, 351-52 (Iowa 1970), *appeal dismissed,* 402 U. S. 936 (1971); *People v. Jaworski,* 387 Mich. 21, 194 N.W.2d 868, 869-72 (1972); *State v. Guy,* 81 N. M. 641, 471 P. 2d 675, 677 (1970); *Nachtigall v.*

*Erickson,* 85 S. D. 122, 178 N.W.2d 198, 200-01 (1970); *cf.*
*United States ex rel. Curtis v. Zelker,* 466 F. 2d 1092, 1102
(2d Cir. 1972) (dictum), *cert. denied,* 410 U. S. 945 (1973);
*State v. Laurino,* 106 Ariz. 586, 480 P. 2d 342 (1971); *State v.*
*Bugbee,* 161 Conn. 531, 290 A. 2d 332 (1971). *See generally J.*
*Bond, Plea Bargaining and Guilty Pleas* § 3.08[1], at 90-92
(1975).

Similarly, this State's Court of Special Appeals, at least
until its decision in the case at bar, interpreted *Boykin* in the
same manner as California. In *McCall v. State, supra,* 9 Md.
App. at 198-99, the Court of Special Appeals concluded that:

> "The precise holding in *Boykin* was that it was
> error for the state trial judge to accept a plea of
> guilty without an affirmative showing on the
> record that it was intelligent and voluntary. [395 U.
> S. at 242,] 89 S. Ct. at 1711. As we have stated, this
> was the law of this State prior to the *Boykin*
> opinion. *See Duvall v. State,* [5 Md. App. 484, 487,
> 248 A. 2d 401 (1968)]. But while we have recognized
> generally that federal constitutional rights were
> involved in the waiver that takes place when a plea
> of guilty is entered, what *Boykin* did was to specify
> three such rights which are among those so
> involved. They are: (1) the privilege against
> compulsory self-incrimination; (2) the right to trial
> by jury; and (3) the right to confront one's accusers.
> Although other federal constitutional rights are
> also involved, *Boykin* made clear that if the record
> does not affirmatively show that a defendant had
> an intelligent understanding that he possessed each
> of these specified rights and voluntarily waived
> them, the acceptance of a plea of guilty would not
> be effective in any event." *Accord, English v. State,*
> *supra,* 16 Md. App. at 442; *Williams v. State, supra,*
> 10 Md. App. at 572; *see Silverberg v. Warden,*
> *supra,* 7 Md. App. at 658-59.

Then, in *English v. State, supra,* 16 Md. App. at 446, that
court set forth with great particularity what it believed

constitutionally necessary to constitute a valid waiver of the privilege against compulsory self-incrimination:

> "[I]n order for an accused to waive the privilege . . . as it applies to his trial on a criminal charge he must understand that he has the right not to testify and that no unfavorable inference may arise from his not testifying. Unless the record affirmatively shows that he understood this privilege and waived it in the constitutional sense, acceptance of his plea of guilty is not effective."

Davis, of course, relies on *English*, *Williams*, *McCall*, and *Silverberg*, as well as on the decisions of other courts which construe *Boykin* to require a specific on-the-record reference to and waiver of the three rights that Justice Douglas listed. We, however, are unable to accede to this interpretation of *Boykin*. Our position is based on our own reading of *Boykin* and subsequent Supreme Court cases, as well as on the rejection of the petitioner's contention both by the vast majority of state courts and by all of the federal courts of appeal which have considered the issue.

As we have already pointed out, the *Boykin* decision itself was rendered in the context of a trial record totally silent with respect to whether the guilty plea was voluntary and intelligent, and thus the Supreme Court could not rule on the sufficiency of anything other than a barren record. After scrutinizing the language employed by Justice Douglas, we conclude that *Boykin* does not stand for the proposition that the due process clause requires state trial courts to specifically enumerate certain rights, or go through any particular litany, before accepting a defendant's guilty plea; rather, we think *Boykin* merely holds that the record must affirmatively disclose that the accused entered his confession of guilt voluntarily and understandingly. Cases decided by the Supreme Court after *Boykin* do not indicate otherwise, nor do they themselves mandate express individualized references to and waivers of the particular rights mentioned by Justice Douglas. *See generally* Bishop, *Guilty Pleas in Wisconsin*, 58 Marq. L. Rev. 631, 635 (1975). Meriting our

particular attention in this regard is *Brady v. United States*, 397 U.S. 742, 90 S. Ct. 1463, 25 L.Ed.2d 747 (1970), a case decided shortly after *Boykin* in which the Court upheld an accused's guilty plea, citing *Boykin*, on the ground that it was "voluntary" and "intelligent." *Id.* at 747-48, 90 S. Ct. at 1468-69. The Court in a footnote strongly intimated that the fears expressed in Justice Harlan's dissent in *Boykin* were groundless:

> "The requirement that a plea of guilty must be intelligent and voluntary to be valid has long been recognized. . . . The new element added in *Boykin* was the requirement that the record must affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily." *Id.* at 747 n. 4, 90 S. Ct. at 1468 n. 4.

Moreover, nowhere in *Brady* or the two related cases decided the same day did the Court indicate or imply that specific articulation of the three rights set forth in *Boykin* was required. *See Parker v. North Carolina*, 397 U. S. 790, 90 S. Ct. 1458, 25 L.Ed.2d 785 (1970); *McMann v. Richardson*, 397 U. S. 759, 90 S. Ct. 1441, 25 L.Ed.2d 763 (1970). To like effect is *North Carolina v. Alford*, 400 U. S. 25, 31, 91 S. Ct. 160, 164, 27 L.Ed.2d 162 (1970), decided but a year after *Boykin*, wherein the Court by negative implication again indicated that *Boykin* did not represent a substantial departure from its prior views with respect to the acceptance of guilty pleas:

> "The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant. See *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274 (1969); *Machibroda v. United States*, 368 U.S. 487, 493, 82 S.Ct. 510, 513, 7 L.Ed.2d 473 (1962); *Kercheval v. United States*, 274 U.S. 220, 223, 47 S.Ct. 582, 583, 71 L.Ed. 1009 (1927)."

As in *Brady*, there is no language in *Alford* referring to an express enumeration of the three constitutional rights

mentioned in *Boykin*; similarly, no decisions of the Supreme Court subsequent to *Alford* indicate otherwise. *See Henderson v. Morgan*, 96 S. Ct. 2253, 49 L.Ed.2d 108 (1976);[2] *Tollett v. Henderson*, 411 U. S. 258, 93 S. Ct. 1602, 36 L.Ed.2d 235 (1973); *Fontaine v. United States*, 411 U. S. 213, 93 S. Ct. 1461, 36 L.Ed.2d 169 (1973) (per curiam). *But see Johnson v. Ohio*, 419 U. S. 924, 95 S. Ct. 200, 42 L.Ed.2d 158 (1974) (Douglas, J., joined by Brennan and Marshall, JJ., dissenting from denial of petition for certiorari on the ground that *Boykin* established that trial courts must obtain from defendants pleading guilty a specific and knowing waiver of the three enumerated rights).

Many courts, both federal and state, have reached the same conclusion as to *Boykin*'s meaning. Agreeing that the issue is whether the record affirmatively shows that the guilty plea is voluntary and intelligent, all seven of the federal courts of appeals which have addressed the question have held that *Boykin* does not require specific reference to and waiver of the three rights highlighted by Justice Douglas. *See, e.g., Fontaine v. United States*, 526 F. 2d 514, 516 (6th Cir. 1975); *Roddy v. Black*, 516 F. 2d 1380, 1383-85

---

2. As distinguished from the case now before us, in which the defendant argues that his guilty plea was not entered voluntarily and intelligently because he did not understand the nature of one of the constitutional rights he was waiving by pleading guilty, in the recent case of Henderson v. Morgan, 96 S. Ct. 2253, 49 L.Ed.2d 108 (1976), the defendant contended that his guilty plea was not entered voluntarily and intelligently because he did not understand the nature of the charge to which he was pleading guilty (second-degree murder). The Supreme Court, in *Morgan*, under the somewhat unusual facts of that case, accepted the accused's assertion, holding that because the requisite intent of the crime, which it characterized as "a critical element of the offense of second-degree murder," was not explained to the defendant, his guilty plea was involuntary. *Id.* at 2258. In the course of so holding, the Court made the following statement, which we think lends some support to the position we have taken in the case at bar:

"Instead of testing the voluntariness of a plea by determining whether a ritualistic litany of the formal legal elements of an offense was read to the defendant, [the state] argues that the court should examine the totality of the circumstances and determine whether the substance of the charge, as opposed to its technical elements, was conveyed to the accused. *We do not disagree with the thrust of [the state's] argument*, but we are persuaded that even under the test which [it] espouses, this judgment finding respondent guilty of second-degree murder was defective." *Id.* at 2257 (emphasis added).

(6th Cir. 1975), *cert. denied,* 423 U. S. 917 (1975); *Wilkins v. Erickson,* 505 F. 2d 761, 763 (9th Cir. 1974); *Todd v. Lockhart,* 490 F. 2d 626, 628 n. 1 (8th Cir. 1974) (per curiam); *McChesney v. Henderson,* 482 F. 2d 1101, 1106-10 (5th Cir. 1973), *cert. denied,* 414 U. S. 1146 (1974); *Beavers v. Anderson,* 474 F. 2d 1114, 1117 (10th Cir. 1973); *United States v. Sherman,* 474 F. 2d 303, 305 (9th Cir. 1973); *United States ex rel. Montgomery v. Illinois,* 473 F. 2d 1382, 1383 (7th Cir. 1973) (per curiam); *Wade v. Coiner,* 468 F. 2d 1059 (4th Cir. 1972); *United States v. Frontero,* 452 F. 2d 406, 415 (5th Cir. 1971); *Missouri v. Turley,* 443 F. 2d 1313, 1318 (8th Cir.), *cert. denied,* 404 U. S. 965 (1971). *See also United States ex rel. Hill v. Ternullo,* 510 F. 2d 844, 845 & n. 1 (2d Cir. 1975) (reserving judgment). Similarly, a majority of the state courts which have ruled on this issue have taken the identical position with regard to *Boykin. See, e.g., Barrett v. State,* 544 P. 2d 830, 832-34 (1975), *aff'd on rehearing,* 546 P. 2d 161 (Alas. 1976); *Hall v. State,* 273 So. 2d 90 (Dist. Ct. App. Fla. 1973) (per curiam); *Commonwealth v. Morrow,* 363 Mass. 601, 296 N.E.2d 468, 472-73 (1973); *State v. Propotnik,* 299 Minn. 56, 216 N.W.2d 637, 638 (1974) (per curiam); *State v. Conner,* 500 S.W.2d 300, 305 (Mo. App. 1973); *State v. Turner,* 186 Neb. 424, 183 N.W.2d 763 (1971); *Raisley v. Sullivan,* 8 Ore. App. 332, 493 P. 2d 745, 746-47 (1972); *Franks v. State,* 513 S.W.2d 584, 585 (Tex. Crim. App. 1974); *Jones v. State,* 59 Wis. 2d 184, 200, 207 N.W.2d 890, 898 (1973); *J. Bond, Plea Bargaining and Guilty Pleas* § 3.08[2], at 92-93 (1975). *But see People v. Rizer,* 5 Cal. 3d 35, 484 P. 2d 1367, 95 Cal. Rptr. 23 (1971); *Brainard v. State,* 222 N.W.2d 711, 715-18 (Iowa 1974); *State v. Armstrong,* 263 S. C. 594, 211 S.E.2d 889, 890 (1975). Finally, we think it particularly significant that several states which had at first concluded that *Boykin* required a specific enumeration and waiver of the three rights have since retreated from that stance and have now joined the increasing number of courts holding otherwise. *Compare People v. Jaworski,* 387 Mich. 21, 194 N.W.2d 868, 869-72 (1972) *with People v. Kuchulan,* 390 Mich. 701, 213 N.W.2d 95 (1973); *Higby v. Sheriff of Clark County,* 86 Nev. 774, 476 P. 2d 959, 963 (1970) *with*

*Heffley v. Warden,* 89 Nev. 573, 516 P. 2d 1403 (1973) *and Armstrong v. Warden,* 90 Nev. 8, 518 P. 2d 147 (1974); *State v. Griffey,* 29 Ohio App. 2d 246, 281 N.E.2d 32 (1972), *rev'd,* 35 Ohio St. 2d 101, 298 N.E.2d 603 (1973) *with State v. Buchanan,* 43 Ohio App. 2d 93, 334 N.E.2d 503 (1974) *and State v. Little,* 34 Ohio App. 2d 121, 296 N.E.2d 574, 576 (1973); *Nachtigall v. Erickson,* 85 S. D. 122, 178 N.W.2d 198, 200-01 (1970) *with Merrill v. State,* 87 S. D. 285, 206 N.W.2d 828, 830-31 (1973). *In addition, compare State v. Laurino,* 106 Ariz. 586, 480 P. 2d 342, 344 (1971) *with State v. Williker,* 107 Ariz. 611, 491 P. 2d 465, 468 (1971).

Since the decisions of this Court have long required guilty pleas to be entered voluntarily and intelligently, *Boykin,* as we interpret it, does not change the law as heretofore announced by this Court with regard to the acceptance of confessions of guilt except to command that the record affirmatively reflect what we had already mandated. Examining the facts of the present case in light of what we have just said, we hold that Davis' guilty plea was properly entered because, as demonstrated by the colloquy previously quoted, the record taken as a whole affirmatively discloses that the petitioner's plea was, as found by the trial judge, voluntary and intelligent.

Beyond the constitutional minimum inquiry, however, we encourage trial judges to engage those persons seeking to enter guilty pleas in a dialogue as detailed as time, resources and circumstances permit. Such an on-the-record colloquy should insure beyond cavil that the plea is properly entered, and thus insulate it from successful direct or collateral attack. For suggested approaches, *see, e.g., Call v. McKenzie,* W. Va., 220 S.E.2d 665, 670-71 (1975); *Fed. R. Crim. P.* 11; ABA Project on Standards for Criminal Justice, The Function of the Trial Judge § 4.2 (Tent. Draft, June 1972); Bishop, *Guilty Pleas in Wisconsin,* 58 Marq. L. Rev. 631, 654-58 (1975); Bishop, *Waivers in Pleas of Guilty,* 60 F.R.D. 513, 532-38 (1974).

*Judgment of the Court of Special Appeals affirmed.*

*Murphy, C. J., concurring in the judgment:*

I agree with the Court that the record in this case affirmatively discloses that the appellant intelligently and voluntarily entered his guilty pleas and I, therefore, concur in the judgments affirming the convictions. I do not, however, agree with the Court's holding that the due process clause of the Fourteenth Amendment does not require that the substance of the three constitutional rights specified in *Boykin v. Alabama,* 395 U. S. 238, 89 S. Ct. 1709, 23 L.Ed.2d 274 (1969), be shown on the record to have been enumerated to the accused, and his intelligent and knowing waiver thereof obtained, prior to acceptance of his guilty plea.

Shortly after *Boykin* was decided, the Court of Special Appeals interpreted that decision as making clear "that if the record does not affirmatively show that a defendant had an intelligent understanding that he possessed each of these specified rights and voluntarily waived them, the acceptance of a plea of guilty would not be effective in any event." *McCall v. State,* 9 Md. App. 191, 199, 263 A. 2d 19 (1970), *cert. denied,* 258 Md. 729 (1970). *Accord, Williams v. State,* 10 Md. App. 570 at 572, 271 A. 2d 777 (1970), *cert. denied,* 261 Md. 730 (1971); *see Silverberg v. Warden,* 7 Md. App. 657 at 658-59, 256 A. 2d 821 (1969). The trial courts of the State, adhering to these decisions, have long required a specific, on-the-record reference to, and waiver of, the three constitutional rights outlined in *Boykin.* I think it is a dangerous and unnecessary departure from the established practice to now hold, absent a clear mandate from the Supreme Court, that *Boykin* does not mean what it so plainly says; and that the substance of the so-called *Boykin* constitutional rights need not be given preliminary to acceptance of a guilty plea and an on-the-record waiver obtained. Indeed, five years after *Boykin* was decided, the author of that decision, Justice Douglas, stated in a dissent from the denial of a certiorari petition (joined by Justices Brennan and Marshall) that "*Boykin* established that the State must demonstrate the defendant's knowing waiver of the three constitutional rights there enumerated." *Johnson v. Ohio,* 419 U. S. 924, 95 S. Ct. 200, 42 L.Ed.2d 158 (1974).

Because Judge Naughton specifically and sufficiently apprised the appellant on the record that his guilty pleas would constitute a waiver of each of his *Boykin* enumerated constitutional rights, there can be no doubt that the pleas were voluntary and intelligently entered.

Judge Eldridge authorizes me to state that he concurs in the views expressed herein.