**George CARTER, Petitioner,**

v.

**Frank GRAY, Respondent.**

**Civ. A. No. C 80–575 A.**

United States District Court,
N.D. Ohio, E.D.

Nov. 18, 1983.

## MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

This case is on remand from the Sixth Circuit Court of Appeals for additional findings of fact and conclusions of law to support this Court's order of February 19, 1981, granting George Carter's Petition for a Writ of Habeas Corpus.

## BACKGROUND

On May 2, 1972, learning of his wife's repeated infidelities, George Carter confronted her with tape recorded evidence of her latest affair. In the heat of the ensuing argument, Carter shot his wife, then turned the gun on himself. As a result of his self-inflicted wounds, he was hospitalized for nearly five months.

George Carter was charged with first degree murder and went to trial in December of 1972; before the trial ended, Carter entered a plea of guilty to the lesser charge of second degree murder and was sentenced to life imprisonment. The record is uncontroverted that, before accepting Carter's plea, the trial court judge did not inform Carter of the elements of second degree murder, nor did the judge inquire whether Carter understood his plea.[1]

Four months later Carter began challenging his conviction on the ground that his guilty plea was not knowingly, willingly, and intentionally entered. His first attempt at post-conviction relief was denied for failure to exhaust state remedies. A subsequent motion for leave to file a direct and delayed appeal was granted by the state court of appeals, which remanded Carter's case for an evidentiary hearing to

Charles E. Grisi, Burdon, Pierce, Grisi & Merlitti, Akron, Ohio, for petitioner.

Simon Karas, Asst. Atty. Gen., Columbus, Ohio, for respondent.

1. Rule 11(C)(2)(a) of the Ohio Rules of Criminal Procedure now requires the trial court to personally advise the defendant and ascertain that the defendant "is making the plea voluntarily, with understanding of the nature of the charge and of the maximum penalty involved, and if applicable, that he is not eligible for parole." This was not required of trial judges at the time of Carter's plea.

Rule 11, effective July 1, 1973, was adopted after Carter's trial and the entry of his plea. The standards governing acceptance of guilty pleas in Ohio prior to Rule 11 are outlined in *State v. Piacella*, 27 Ohio St.2d 92, 271 N.E.2d 852 (1971) and *State v. Griffey*, 35 Ohio St.2d 101, 298 N.E.2d 603 (1973). *See, State v. Stone*, 43 Ohio St.2d 163, 168, 331 N.E.2d 411 (1975).

"ascertain if the advice required by *Henderson v. Morgan*, 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976) was furnished by counsel or otherwise." *State v. Carter*, unreported No. 8860 (Summit Co.Ct.App. September 13, 1978).

At the conclusion of its evidentiary hearing, the trial court specifically found: 1) that none of the prosecutors involved in Carter's case could recall discussing with him or informing him, at any time, that second degree murder included the elements of malice and an intent to kill; 2) that Carter's defense counsel could not recall discussing with him, or advising him, of the elements of second degree murder prior to Carter's plea; and 3) that the court could not determine that Carter was at any time specifically informed or aware that the essential elements of second degree murder involved malice and an intent to kill. Consequently, the state court of appeals vacated Carter's guilty plea and remanded the case back to the trial court for further proceedings.

On appeal, the Ohio Supreme Court reversed. Without conducting an evidentiary hearing of its own, or hearing any additional evidence, the Ohio Supreme Court made its own independent findings of fact in contradiction of the trial court's and court of appeals' findings of fact. The Ohio Supreme Court stated that even though Carter's counsel could not specifically recall advising Carter of the elements of second degree murder,

... defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit ... (citation omitted)

*State v. Carter*, 60 Ohio St.2d 34, 40, 396 N.E.2d 757 (1979). The Ohio Supreme Court went on in its opinion to state that Carter's plea was valid because it could be assumed that, through his conversations with his attorneys, Carter had been informed of the nature of the second degree murder offense. *Id.* at 39–40, 396 N.E.2d 757. In so concluding, the Ohio Supreme Court specifically rejected the state court

of appeals' and trial courts' findings of fact to the contrary.

Carter next petitioned this Court for a Writ of Habeas Corpus. At the close of an evidentiary hearing held February 18, 1981, this Court denied the State's motion for a continuance and issued oral findings of fact that: 1) no useful purpose would be served by hearing Carter's trial defense counsel Bernard Rosen's testimony because the State agreed that his proposed testimony would not be inconsistent with his testimony at the state court evidentiary hearing where Rosen stated that he could not recall informing Carter of the elements of second degree murder before Carter entered his plea; 2) the state could not establish that the trial court had delivered its instructions to the jury before Carter entered his plea because the notes from which a transcript could have been prepared had been lost; 3) even if the jury instructions had been read, there was no evidence that Carter heard or understood them; 4) Carter's trial attorneys' assertions that they ordinarily make it their practice to discuss elements of a crime were not sufficient to establish that Carter had in fact been so advised in his particular case; and 5) even if such a presumption were raised, the presumption could not stand in the face of an affidavit and testimony from Carter, which the Court found credible, that he had never been informed of the specific elements of the crime to which he had pled guilty. Transcript of February 18, 1981 ("T.I") pp. 49–52.

Based on the above findings, this Court granted Carter's habeas corpus petition. On appeal, the Sixth Circuit Court of Appeals held: 1) that denying the state's Motion for a Continuance was an abuse of discretion; and 2) additional findings of fact and conclusions of law were necessary to grant the Writ.

Pursuant to the Sixth Circuit's mandate, this Court held an evidentiary hearing for the second time on May 13, 1982. In deference to the reasons advanced by the State when seeking the continuance which the Sixth Circuit found meritorious, this Court

heard testimony from George Carter's brother Henry, who, not surprisingly, was unable to shed any light favorable to the State when he testified concerning the events and conversations surrounding George Carter's plea. Carter's attorneys at the trial level also testified. Their testimony, as predicted, was no different than their testimony before the state trial court which had found that Carter had *not* been advised of the elements of second degree murder. Both the State and Carter were given every opportunity to fully present any and all evidence and arguments. Transcript of May 13, 1982 ("T.II"), pp. 161 and 164.

## FINDINGS OF FACT

George Carter pleaded guilty to second degree murder after having been formally charged with the crime of first degree murder. Although the evidence against Carter included admissions made by him to the police, his attorneys advised him that conviction on a manslaughter charge, or acquittal, was possible. Before his trial, Carter was repeatedly advised by his attorneys that his case involved a "crime of passion" and they had discussed with him the possibility of pleading guilty to manslaughter.

Carter first discussed second degree murder on December 15, 1972, when his attorneys informed him that the State would accept a plea to second degree murder in lieu of sending the case to the jury. The plea arrangement was offered on a Friday afternoon during a recess before Carter was scheduled to testify. Carter met with his attorneys, Irving Portman and Bernard Rosen, and his brother and sister, for approximately twenty minutes while the judge and jury waited to resume the trial testimony.

During this meeting, the discussion centered on possible sentences if Carter continued with the trial, and his possible sentences if he pleaded guilty. His attorneys assessed the likelihood, in light of the evidence, that the jury would return verdicts of first degree murder, second degree murder, or manslaughter. Carter's attorneys do not recall ever informing Carter of the elements of second degree murder. Carter's attorneys do not recall ever advising Carter that intent to cause death is an element of second degree murder. Carter does not recall being advised of the elements of second degree murder. Carter's brother does not recall hearing Carter informed of the elements of second degree murder. All of the participants who testified agreed that the focus of the conversation was whether Carter should plead guilty, and what his sentence would be if he did.

The court bailiff interrupted the meeting two or three times to inquire when they would be ready to resume the trial. At Carter's attorney's request, the trial court adjourned until Monday morning, without hearing further testimony, in order to give Carter the weekend to consider the plea. After their twenty minute session with Carter, his attorneys did not speak with Carter again until Sunday when Carter telephoned Bernard Rosen and, during a fifteen minute conversation, indicated that he had decided to plead.

Carter entered his guilty plea on Monday, December 18, 1972 before the defense rested its case and without understanding the nature of the charge or its elements, including the intent to cause death. The trial court judge did not inform Carter of the elements of second degree murder, nor did the judge inquire whether Carter understood his plea. The prosecutor did not advise Carter of the elements of second degree murder. The jury instructions were never delivered and the jury never deliberated. Plaintiff's exhibits 1 and 2 (Affidavits of Assistant County Prosecutor Dennis Bartek and Court Reporter V. Ruth Hill) unequivocally established, for the first time in any of the post conviction records, (and contrary to the State's assertion in every previous court proceeding) that the jury instructions in fact had not been delivered before Carter entered his plea. Neither the Supreme Court of Ohio, the Ohio Court of Appeals for the Ninth Appellate District, nor the Summit County Court of Common

Pleas were aware of the incorrectness of the Journal Entry when they considered the voluntariness of Carter's plea.

### CONCLUSIONS OF LAW

A. *Inadequate State Court Procedure to Afford a Full and Fair Hearing*

■ In habeas corpus proceedings, federal courts have only limited power to reject a state court's findings of fact, made after a hearing on the merits. This "presumption of correctness" which attaches under 28 U.S.C. § 2254(d) requires federal courts to give equal deference to factual determinations of all state courts, whether the court be a trial court or an appellate court. *Sumner v. Mata,* 449 U.S. 539, at 547–548, 101 S.Ct. 764 at 769, 66 L.Ed.2d 722 (1981).

■ However, appellate tribunals generally do not substitute their own fiction for a lower court's carefully considered findings of fact. The Ohio Supreme Court took just such a novel approach to its duty of judicial review when it heard George Carter's case. Clearly, such a tactic was not contemplated by the United States Supreme Court when it defined the duties of federal courts in habeas proceedings and stated: "The federal habeas corpus statute presumes the norm of a fair trial in the state court *and adequate state post-conviction remedies to redress possible error* ..." *Jackson v. Virginia,* 443 U.S. 307, 323, 99 S.Ct. 2781, 2791, 61 L.Ed.2d 560 (1979). After examining the record in Carter's case, and finding that the Ohio Supreme Court had dispensed with the trial court's factual findings and had created its own facts, this Court concluded that George Carter had been denied adequate post-conviction remedies and had therefore been denied the full and fair hearing which justice requires.

The record revealed that the trial court, after conducting its own evidentiary hearing at the direction of the state court of appeals, made the initial finding of fact that George Carter's plea was involuntary because he was not informed of the elements of second degree murder. *State v. Carter,* unreported No. 72–5–494 (Summit County Ct.C.P. October 27, 1978). Based on those findings, the Ohio court of appeals concluded that Carter's plea was constitutionally infirm and it vacated his plea. *State v. Carter,* unreported No. 8860 (Summit County Ct.App. November 29, 1978).

The Supreme Court of Ohio reversed that finding even though it had not heard the testimony presented at the evidentiary hearing and had not had an opportunity to observe the demeanor of the witnesses and weigh the credibility of their testimony. The Ohio Supreme Court's decision to reverse was not based on a finding that the Ohio court of appeals had misapplied the law; rather, it was based on the Ohio Supreme Court's own new version of the facts. *State v. Carter,* 60 Ohio St.2d 34, 38, 396 N.E.2d 757 (1979).

The Ohio Supreme Court found that Carter had been informed of the elements of second degree murder. In so doing, it invented a fact that the state trial court unequivocally found did not exist. The new factual finding was not an inference which could be drawn from the record as a whole; rather, it was an outright contradiction of the trial court's finding that:

... The Court further fails to find from the evidentiary hearing that the Defendant was at any time specifically informed or aware that the essential elements of the crime to which he entered a plea of guilty involved the elements of an intentional killing or malice.

*State v. Carter,* unreported No. 72–5–494, *supra.* In reversing the finding that Carter's plea was uninformed and therefore involuntary, the Ohio Supreme Court extrapolated its phantom fact from an assumption of its own:

\*   \*   \*   \*   \*   \*

... The defense argued to the jury that this was a case of manslaughter, not first degree murder, and in opening statements counsel emphasized that there was no premeditation, intent to kill, or malice. The defendant's attorneys were competent trial attorneys, and we

can only *assume* that the arguments they presented to the jury were the same ones they made to their client in the private conferences and the mock dry runs that every trial attorney experiences. Looking at all these circumstances, we find that the defendant was informed of the nature of second degree murder. (emphasis added)

\* \* \* \* \* \*

*State v. Carter*, 60 Ohio St.2d at 39–40, 396 N.E.2d 757.

In a habeas proceeding, a federal court may interfere with a state court's decision only if it makes at least one of the eight findings delineated in 28 U.S.C. § 2254(d). *Sumner v. Mata, supra,* 449 U.S. at 544–545, 101 S.Ct. at 767–68. The Ohio Supreme Court's creation of a new fact based on its "assumption", without any evidence to support such a fact, falls squarely within § 2254(d)(2): "that the fact finding procedure employed by the State court was not adequate to afford a full and fair hearing." *Id.* at 544, 101 S.Ct. at 767.

This Court concluded that the Ohio Supreme Court's assumption of a phantom fact eliminated any "presumption of correctness" from that court's factual determinations. The general rule is that federal courts reviewing state criminal convictions on writs of habeas corpus have broad discretionary power to hold *de novo* evidentiary hearings. *Fowler v. Jago*, 683 F.2d 983 (6th Cir.1982) (*citing Townsend v. Said,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963)). However, once it is determined that the state court has not "... after a full hearing reliably found the relevant facts ...", *Id.* at 312–313, 83 S.Ct. at 756–57, the presumption of correctness does not operate, and an evidentiary hearing is mandated. *Fowler v. Jago, supra,* at 987. Accordingly, this Court conducted its own evidentiary hearing and considered Carter's challenge to the Ohio Supreme Court's decision to overturn the state trial court and state court of appeals' findings that his guilty plea was not constitutionally sound.

## B. *Voluntary Plea*

A guilty plea is not valid unless it is voluntary in the constitutional sense. *Henderson v. Morgan,* 426 U.S. 637, 644, 96 S.Ct. 2253, 2257, 49 L.Ed.2d 108 (1976). A plea is constitutionally involuntary if the defendant has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt. Without proof that the defendant in fact understood the charge to which he pleaded, or that he had adequate notice of the nature of the charge, the plea cannot be voluntary. *Smith v. O'Grady,* 312 U.S. 329, 334, 61 S.Ct. 572, 574, 85 L.Ed. 859 (1941). While the facts of the instant case do not reveal the sort of grievous misconduct present in *Smith v. O'Grady, supra,* the facts in Carter's case are on all fours with those in *Henderson v. Morgan, supra,* a case in which the United States Supreme Court applied *Grady* and upheld the decision to vacate a plea of guilty to second degree murder. In *Henderson,* every state court which considered Henderson's appeals affirmed his conviction, as did the federal district court which initially denied his writ of habeas corpus. Not until Morgan reached the federal court of appeals on habeas corpus was his conviction questioned.

On remand, the federal district court vacated Morgan's conviction after holding an evidentiary hearing and finding that Morgan's lawyers advised him of his possible sentences under second degree murder, but did not discuss the elements of the crime or the requisite intent to cause death. The United States Supreme Court affirmed, despite *Sumner v. Mata*'s strictures regarding federal court's interference with state court decisions through habeas corpus relief. Likewise, this Court must concur with the state court of appeals and vacate Carter's plea.

## C. *Notice of the Charge*

This Court's evidentiary hearing established that the Ohio Supreme Court based its decision not only on an erroneous assumption, but also on a mistaken impres-

sion of the facts surrounding Carter's trial. The Ohio Supreme Court did not review a complete transcript of the trial because one had not then, nor has it ever, been prepared. The notes from which a transcript could be prepared are lost. T.II pp. 82–83. Consequently the Ohio Supreme Court erroneously believed that Carter heard the trial judge read the jury instructions before Carter entered his guilty plea. *State v. Carter*, 60 Ohio St.2d 34, 35, 396 N.E.2d 757 (1979). The affidavits of Assistant Summit County Prosecutor Dennis Bartek and Court Reporter V. Ruth Hill,[2] and the testimony of George Carter, prove otherwise. Bartek's and Hill's affidavits aver that the jury instructions were never delivered in the case because Carter entered his plea before the trial reached that stage of the proceeding.

Relying in part on an erroneous version of the facts, the Ohio Supreme Court employed a "totality of the circumstances" test and inquired whether Carter received "notice" of the second degree murder charge, not whether the nature of the charge to which he pleaded guilty had been explained to him. The Ohio Supreme Court held that Carter "received notice of the charges leveled against him and understood the nature of those charges."[3] However, testimony before this Court and the state trial court clearly demonstrate that Carter did not have notice of the elements of second degree murder.

■ Carter was never charged with second degree murder. If he had been, he might have had notice that an element of the crime was intent to cause death. *Henderson v. Morgan, supra,* 426 U.S. at 646, 96 S.Ct. at 2258. Carter's admission, that he killed his wife, does not necessarily constitute an admission that he was guilty of second degree murder. *Id.* Rather, Carter repeatedly was told his was a "classic"

manslaughter case, because it was a "crime of passion." T.I, p. 23; T.II, pp. 44, 54, 55. Carter denies knowing the intent element, and there is no evidence, from any quarter, that anyone discussed it with him.

Awareness of the element of intent is crucial, as the Supreme Court held in *Henderson v. Morgan.* That Court hypothetically assumed that, despite Morgan's protestations to the contrary, even if he had been advised of the element of intent, "he probably would have pleaded guilty anyway." *Henderson v. Morgan, supra* at 645, n. 12, 96 S.Ct. at 2257 n. 12. However, the Court went on to hold that "[s]uch an assumption is ... an insufficient predicate for a conviction of second-degree murder." *Id.* Nor was an assumption based on the routines of defense counsel deemed an adequate predicate:

> ... it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit. This case is unique because the trial judge found as a fact that the element of intent was not explained to respondent.

*Henderson v. Morgan, supra* at 647, 96 S.Ct. at 2258. "Without ... proof that he in fact understood the charge, the plea cannot be voluntary ..." *Id.* at 646, n. 13, 96 S.Ct. at 2258 n. 13.

This Court finds that Carter's guilty plea to the crime of second degree murder was involuntary under *Henderson v. Morgan, supra,* and was entered without due process of law. Carter's Petition for Writ of Habeas Corpus is granted. The Writ shall issue unless the State of Ohio elects to prosecute Carter within 120 days of the date of this Order.

IT IS SO ORDERED.

---

**2.** This evidence was not before the state courts or the Sixth Circuit Court of Appeals. It was first produced during this Court's second evidentiary hearing on May 13, 1982.

**3.** In Ohio, the syllabus contains the rule of law used to decide the case. *Zacchini v. Scripps-*

*Howard Broadcasting Co.,* 433 U.S. 562, 568, 97 S.Ct. 2849, 2853, 53 L.Ed.2d 965 (1977); *Beck v. Ohio,* 379 U.S. 89, 93 n. 2, 85 S.Ct. 223, 226 n. 2, 13 L.Ed.2d 142 (1964); *Perkins v. Benquet Consolidated Mining Co.,* 342 U.S. 437, 441, 443, 72 S.Ct. 413, 416, 417, 96 L.Ed. 485 (1952).