SABIN, APPELLANT, *v.* BUREAU OF MOTOR VEHICLES, APPELLEE.

(No. 23268 [85-CI-375] — Decided January 3, 1986.)

Court of Common Pleas of Ottawa County.

*David M. Buda* and *Janet A. Grubb,* for appellant.

*George C. Wilber,* law director, for appellee.

HITCHCOCK, J. Appellant, Darrell B. Sabin, appealed from an order of the Bureau of Motor Vehicles ("BMV") received July 5, 1985 notifying him that his driver's license No. PE 141968 was suspended for one year effective July 25, 1985 for his alleged refusal to submit to a chemical test when arrested in Rossford on May 20, 1985 for driving while under the influence of alcohol ("DWI"). He timely lodged his appeal to the Municipal Court of Port Clinton which exercises jurisdiction throughout the county of Ottawa, wherein appellant lives, as authorized by R.C. 4511.191(F).

As grounds for appeal under R.C. 4511.191(F), he alleges error on the part of the BMV because:

(1) the arresting officer did not have any reasonable grounds to arrest him for DWI;

(2) appellant did not refuse to submit to any chemical test; and

(3) the arresting officer at no time advised appellant of any consequences by reason of any alleged refusal to take the test.

Subsequent to the perfection of this appeal, appellant employed new counsel and amended his petition of appeal to add "that his employment is of such a nature that his ability to continue in the employment would be seriously affected if the suspension  otherwise required under the applicable law is imposed." The last phrase of R.C. 4511.191(F), after listing issues to be heard on the appeal, requires the hearing judge to also determine: "* * * whether [petitioner's] employment is of such a nature that his ability to continue in the employment would be seriously affected if the suspension otherwise required under this section is imposed."

On October 21, 1985, this appeal came on for hearing under case No. 85-CV-617 in the above-mentioned municipal court before Judge Paul C. Moon. After several hours of testimony the hearing was continued to November 4, 1985 at 11:00 a.m. On November 1, 1985, appellant's attorney, Janet A. Grubb, filed a "PETITIONER'S AFFIDAVIT OF PREJUDICE" reading:

"1.  That she is an attorney at law, duly licensed by the State of Ohio.

"2.  That she is counsel for the Petitioner in the above-styled matter.

"3.  That the above-styled matter was instituted pursuant to § 4511.191, Ohio Revised Code, wherein Petitioner requests that the suspension of his driving privileges for an alleged refusal to take a chemical test be abated for the reason that said suspension, as imposed by the Respondent, Registrar of Motor Vehicles, is erroneous and contrary to law as set forth in said Section. Moreover, Petitioner has requested that he be granted occupational driving privileges during the period of the suspension in the event that the action of the Respondent, Registrar of Motor Vehicles, be found to be valid.

"4.  That this matter is currently pending before the Port Clinton Municipal Court, the county court of Ottawa County, the Honorable Judge Paul C. Moon presiding.

"5.  That on or about September 19, 1985, she participated in a telephone conference regarding this matter with said presiding Judge Moon in which said Judge indicated the Court's policy of *never* granting occupational driving privileges in cases involving implied consent suspensions pursuant to § 4511.191, Ohio Revised Code. [Emphasis added.]

"6.  That the Court's announced policy, as set forth in paragraph 5 above, constitutes a predisposition on the part of said Court to the merits of Petitioner's case herein; which predisposition will deprive Petitioner of a fair and impartial hearing on the merits of the case herein thus depriving Petitioner of due process of law.

"7.  That based upon the foregoing the undersigned believes that the only way to guarantee Petitioner a fair and impartial hearing of this matter is to remove the Honorable Judge Moon from this matter pursuant to § 2937.20, Ohio Revised Code.

"8.  That the final hearing of this matter is now set forth [sic] November 4, 1985 at 11:00 A.M."

Judge Moon on November 7, 1985 filed his affidavit of response stating:

"1.  The allegations in Paragraph 5 of Petitioner's affidavit are true in so far as they go concerning the September 19 telephone conference. In addition, Attorney Grubb was advised in chambers prior to the commencement of the bench trial herein October 21, 1985 at 11:00 a.m. of the Court's predisposition against granting *occupational driving privileges* after a BMV implied consent suspension. Further said Attorney was told that should any of the alleged

grounds in the Petition warranting a vacation of the implied consent suspension be established at said trial, the Court would have no hesitancy in vacating the suspension. [Emphasis *sic*.]

"2. Thereafter trial was commenced October 21, 1985 without objection by Petitioner and after approximately one and one-half hour trial time recessed until November 4, 1985 at 11:00 a.m.

"3. Trial having commenced October 21, 1985, the within Affidavit of Prejudice has been filed 'less than 24 hours before the time set for hearing of said cause,' and therefore is out of time and should not be entertained.

"4. Further, Ohio Revised Code Section 4511.191(G)(5) places the question of occupational driving privileges within the absolute discretion of the trial court, and therefore an Affidavit of Prejudice will not lie against a predisposition on that issue.

"5. Further, the undersigned Affiant says:

"a. He is not related to the Petitioner,

"b. He does not have bias or prejudice against the Petitioner,

"c. He does not have a bias or prejudice against Petitioner's counsel,

"d. He is not otherwise disqualified to sit on this case,

"e. Petitioner's Affidavit sets forth no facts of interest, relationship, bias, prejudice or disqualification against this Judge."

Pursuant to R.C. 2937.20, petitioner's affidavit was referred to this court under case No. 23268 (85-CI-375) and assigned to this judge for hearing on Monday, December 2, 1985 at 1:30 p.m. About two weeks prior to this hearing counsel for appellant reported she could not be present on December 2, 1985 by reason of other engagements. Being informed by the court that, if the hearing were continued, it would be necessary to continue it for three or four weeks at least, the court suggested that unless there was some genuine issue of fact the matter be submitted on briefs.

By letter dated November 26, 1985, appellant's counsel provided this court with a copy of "Petitioner's Memorandum in Support of his Affidavit of Prejudice," the original of which was filed with the clerk on November 29, 1985, which indicated a willingness to present the matter on the pleadings and memorandum of law submitted.

Respondent Judge Moon appeared with his counsel, the Law Director of Port Clinton, George C. Wilber. The court, in the presence of court reporter Jane Held, examined the aforementioned memorandum and read paragraph 2 of the statement of facts contained therein, to wit:

"On Monday, May 20, 1985, Petitioner was arrested at Rossford, Ohio, for the offense of OMVI by a police officer of that municipality. Petitioner was transported to the local police station and was requested to submit to a breath test upon a CMI Intoxilyzer. Petitioner assented to that test and made three (3) attempts to blow into the machine. On each of those three (3) attempts, the machine failed to register any result. The testing officer, believing that Petitioner was purposely trying to thwart the test, officially reported that Petitioner had refused the breath test."

The court asked if respondent took any exception to this statement of fact.

Judge Moon replied that the court on October 21, 1985 ran out of time after a couple of hours of testimony all directed, as he remembered it, to the issue of whether or not the officer had good cause for the arrest of appellant on May 20, 1985. He was certain that no testimony was received touching whether or not appellant refused the test, the condition of the testing equipment, or what advice appellant may have received relative to any refusal to take the test.

Judge Moon reaffirmed the content of his affidavit in opposition to appellant's affidavit of prejudice. The law director argued that appellant's affidavit of prejudice alleged no fact indicating any prejudice because it was addressed only to the issue of granting the limited privilege to drive to and from work; and that the statute grants the municipal judge unlimited discretion to grant or deny such limited driving privileges. Respondent's chief argument, however, was directed to the fact that appellant's affidavit was not timely filed after the hearing of the appeal had begun on October 21, 1985 and had been continued to November 4, 1985. According to the affidavit, it was made on October 31, 1985 and was filed in the municipal court on November 1, 1985. No one disputes Judge Moon's assertion that in a telephone conversation held September 19, 1985 he forthrightly explained to counsel for appellant his policy to give real scrutiny to any issue raised under R.C. 4511.191(G)(5) and to restore to the operator his license if any statutory ground for relief was established, but that if no such ground was established it was his policy *never* to grant the limited driving privileges after license suspension. R.C. 4511.191(G)(5) reads:

"The court may, if it finds reasonable cause to believe that suspension would seriously affect the person's ability to continue in his employment, grant the person occupational driving privileges during the period of suspension."

Thereafter, at subsection (G)(6), the person with a suspended license is given leave to file a late R.C. 4511.191(F) appeal if he has not previously so filed "a petition alleging that the suspension would seriously affect the person's ability to continue his employment." Furthermore subsection (G)(7) contains this pertinent language:

"In granting occupational driving privileges, the court may impose any condition it considers reasonable and necessary to limit the use of a motor vehicle by the person. The court shall deliver to the person a permit card, in a form to be prescribed by the court, setting forth the time, place, and other conditions limiting the defendant's use of a motor vehicle. The grant of occupational driving privileges shall be conditioned upon the person's having the permit in his possession at all times during which he is operating a motor vehicle.

"A person granted occupational driving privileges who operates a motor vehicle for other than occupational purposes, in violation of any condition imposed by the court, or without having the permit in his possession, is guilty of a violation of section 4507.38 of the Revised Code."

In respect to the timeliness of appellant's affidavit attention is directed to the case of *Household Consumer Discount Co.* v. *Pokorny* (1978), 60 Ohio App. 2d 253 [14 O.O.3d 232]. Here, the Court of Appeals for Cuyahoga County, in a unanimous opinion by Judge John V. Corrigan, held that a judge in Judge Moon's position may, when confronted with an affidavit filed pursuant to R.C. 2937.20 which is both untimely under the statute and is not accompanied by any allegations of fact that it could not reasonably have been timely filed, overrule the affidavit summarily and proceed to try or hear the matter pending before the court. The syllabus of this case is as follows:

"When an untimely motion for disqualification of a trial judge does not present any facts to show why the motion could not have been filed within the statutory time limit, the ruling on the motion does not require the exercise of judicial discretion, and therefore, the court may overrule the motion and proceed with the case. * * *"

This court agrees that Judge Corrigan's opinion expresses a salutary rule and would sustain Judge Moon here had he pursued that course of action. By fail-

ing, however, to proceed pursuant to the rule of *Pokorny, supra,* this court holds that Judge Moon waived his right to make such disposition, and proceeds to consider the merits of appellant's allegation as if timely filed.

No doubt most judges are entitled to have policies to assist them in the prompt and effective administration of justice. But an announced policy *never* to grant any authorized relief to any person in appellant's position when it appears, prima facie, that his position is precisely that of being a member of the class for which the relief was authorized by the legislature can hardly be anything other than prejudicial to him. Every Ohio judge is required by R.C. 3.23 to take, prior to assuming office, an oath:

"* * * to support the constitution of the United States and the constitution of this state, to administer justice without respect to persons, and faithfully and impartially to discharge and perform all the duties incumbent on him as such judge, according to the best of his ability and understanding. * * *"

As understood by this judge, this obligation requires each of us to conscientiously hear and consider the legal issues raised by any person within our jurisdiction and to grant or deny relief as is appropriate in the circumstances established by evidence.

In the sense that the statute grants discretion without limits or guidelines we should always assume that the discretion conferred is a reasonable one and is to be utilized when appropriate reasons are established. See *In re Ohio Sportservice* (1976), 55 Ohio Misc. 1 [9 O.O. 3d 176] regarding the discretion of the Liquor Control Commission in permit renewal cases. Re-examining appellant's uncontradicted affidavit it is noted that:

(1) he is a single man living alone;
(2) he is fifty-six years of age;
(3) he is gainfully employed in an occupation requiring extensive travel; and
(4) no public transportation of consequence is available for purposes of his employment.

Whether his income is sufficient for the employment of a chauffeur, or whether he has any prior DWI offenses, are facts not shown in this record.

*In re Appeal of Williamson* (1969), 18 Ohio Misc. 67 [47 O.O. 2d 125], and *In re Appeal of Noneman* (1973), 36 Ohio Misc. 122 [65 O.O. 2d 165], were decided by the writer of this opinion. Thereafter, the Ohio General Assembly amended our implied consent statutes to agree with those of Vermont. Moreover, neither appellant in the aforementioned causes has ever since been arrested for any DWI offense or any public intoxication offense.

As observed in the latter of these cited cases alcoholism is a serious problem for at least five percent of the general population even though this fact in no way justifies DWI by any such persons or by the (at least) additional five percent who over a period of years will find themselves unable to manage both alcohol and a satisfactory degree of sobriety. It also does not excuse such persons from supporting their families and paying their taxes. Moreover, it is apparent that a number of substantial citizens for whom alcohol has never been a problem have, upon the celebration of some special event, imbibed unwisely and have been arrested for DWI.

In *Noneman, supra,* at 129, these observations are reported regarding due process for administrative consequence:

"Justices Powell and Rehnquist of the United States Supreme Court it seems to me, have in not too dissimilar circumstances indicated that they appreciate this distinction. See *Argersinger* v. *Hamlin* (June 12, 1972), 407 U.S. 25, 92 S. Ct. 2006, where Mr. Justice Powell, concurring in result, states, at page 48:

" 'Serious consequences also may result from convictions not punishable by imprisonment. Stigma may attach to a drunken-driving conviction or a hit-and-run escapade. Losing one's driver's license is more serious for some individuals than a brief stay in jail. In *Bell v. Burson*, 402 U. S. 535 (1971), we said:

" ' "Once licenses are issued, as in petitioner's case, their continued possession may become essential in the pursuit of a livelihood. Suspension of issued licenses thus involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment." *Id.*, at 539.

" 'When the deprivation of property rights and interests is of sufficient consequence, denying the assistance of counsel to indigents who are incapable of defending themselves is a denial of due process.' "

This decision also noted at 131 that 1970 U. S. Census data showed in part:

"(17)   9,024,631 persons in the U.S. ride to work in passenger automobiles;

"(18)   457,759 persons in Ohio ride to work in passenger automobiles; * * *"

It seems to this court certain that nothing has since occurred to substantially reduce this latter figure in Ohio and there are many reasons for believing it has increased. No doubt this fact was recognized by our legislature when R.C. 4511.191 was last amended, effective March 16, 1983. The above-quoted provisions from this statute appear to have been carefully crafted to meet both considerations of practical safety to our general citizenry and respect for those constitutional considerations due every citizen.

No doubt different judges will reach different conclusions in exercising discretion authorized by law. In my judgment a trial judge's exercise of discretion should be upheld whenever he makes one of two or more available choices in a context where no available choice can be clearly perceived in advance to produce the most salutary result. Not a few alcoholics have proclaimed to this writer that they have no problem with alcohol when such is obviously an incorrect statement; likewise, not a few non-alcoholics with unusual mental faculties, convictions, or other deficiencies refuse to admit them. Still I perceive that every member of the human race has his or her own strengths and weaknesses and that those most highly endowed with talent, appearance, and health are not invulnerable to particular circumstances. Consequently, I must conclude that to administer justice without respect to persons obligates Ohio judges at least to hear the cause of every individual with respect to every form of remedy provided by law and that to proclaim in advance that no consideration will be given to a person who obviously is a citizen for whom the legislation was designed to relieve is a disqualification chargeable to bias.

It is not that I feel that Judge Moon has the slightest prejudice toward appellant as a personal matter, but only as a judgment that the legislature should not have enacted the legislation which it has enacted.[1] Nevertheless, it appears to me the General Assembly's work here is duly authorized by both the Constitutions of Ohio and of the United States

---

[1] Of course this court has considered statutes, regulations, or rules of law it personally feels are unwise, unjust, or unsalutary as it supposes have all other judges who have served a year or more as judge. Still our duty as I perceive it requires all of us who have taken the judicial oath to professionally recognize and correctly apply any applicable law, whether or not we in the exercise of our own faculties agree with either its purpose or requirements.

and deserves our recognition. Clearly our legislature is called upon not infrequently to provide for those without employment at the expense of taxpayers generally.

Looking to 22 Ohio Jurisprudence 3d (1980), Courts and Judges, I find at 211-212:

"§ 122.—*What constitutes bias or prejudice*

"The bias or prejudice which will disqualify him is that personal bias or prejudice which renders the judge unable to exercise his functions impartially in the particular case. The term 'biased or prejudiced,' when used in reference to a judge before whom a cause is pending, implies a hostile feeling or spirit of ill will on the one hand or undue friendship or favoritism on the other, toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and the facts. * * *"

Footnotes to the above section refer to 46 American Jurisprudence 2d (1969), Judges, Section 167, and other references not pertinent, and cite *State, ex rel. Pratt,* v. *Weygandt* (1956), 164 Ohio St. 463 [58 O.O. 315], and *Montalto* v. *State* (1935), 51 Ohio App. 6 [4 O.O. 363]. The latter opinion holds: "A prejudiced judge is not an impartial judge. Prejudice means 'prejudgment' or an opinion formed beforehand, and does not necessarily signify an enmity or ill will against a party." In *Montalto,* a sentence was vacated because the judge failed to exercise a sound discretion in its determination and imposition. In the first of the two foregoing citations it is apparent that Chief Justice Weygandt applied the principle noted in finding Common Pleas Judge Warren S. Earhart of Lawrence County not properly chargeable with any disqualifying bias or prejudice. The Supreme Court of Ohio, the Chief Justice not participating, upheld, four to two, his finding of no disqualification.

From the foregoing this court has no doubt that the relief provided in R.C. 4511.191(G)(5), (G)(6), (G)(7) and (G)(8) was fashioned for persons in circumstances similar to those in which appellant finds himself. Ohio judges having jurisdiction over such circumstances are duty bound to exercise a sound discretion in respect to the relief provided, even though in one thousand such applications one judge might find ten drivers entitled to the relief provided and another judge considering the same one thousand applications might find one hundred drivers so entitled. As long as judges are not only different, but are also members of the human race, there will be statistical discrepancies in the administrative enforcement of any law. But discrepancy is not at issue here, only the declaration of the judge exercising the jurisdiction authorized by law that he NEVER grants the relief provided. Consequently, this court feels it must conclude that in the circumstances shown Judge Moon is disqualified to hear appellant's cause, and this despite my finding that Judge Moon's forthright statements of fact and lack of equivocation are commendable, and that he has not the slightest personal bias or prejudice against appellant.

The court has ascertained that the Honorable Donald Z. Petroff, Judge of the Municipal Court of Oregon, in Lucas County, is "another judge of said inferior court" as R.C. 2937.20 provides who is qualified to hear appellant's appeal and who will be designated to hear it.

*Judgment accordingly.*

HITCHCOCK, J., of the Common Pleas Court of Paulding County, sitting by assignment in the Court of Common Pleas of Ottawa County.