THE STATE OF OHIO *v.* MENUCCI.

(Nos. 23536 and 23537 — Decided July 3, 1986.)

Court of Common Pleas of Ottawa County.

*George C. Wilber,* law director, for respondent judge.

*Thomas J. DeBacco,* for defendant.

HITCHCOCK, J. These two cases are considered together as they concern the same parties. Both were begun in the Municipal Court of Port Clinton where the single resident judge is the Honorable Paul C. Moon who has been judge of said court since December 1979. An affidavit of prejudice pursuant to R.C. 2937.20 filed by defendant's counsel on June 11, 1986 brings the issue of prejudice to this court. For reasons which follow, no prejudice is found.

The facts are as follows:

1a. On August 5, 1985, under No. 85 TRC 2534, a Uniform Traffic Ticket complaint was filed in the municipal court charging defendant with operating a vehicle while under the influence of alcohol (or) drugs in violation of R.C. 4511.19(A)(1) ("DWI"). Following this charge appears the word "Refused," which admittedly refers to the fact that defendant refused the request of the arresting officer to submit to a chemical test for determination of such alcohol or drug content as might be found in his body fluids as provided by R.C. 4511.191.

b. On August 5, 1985, under No. 85-TRD-2534A, a similar complaint was filed in the same court charging

defendant with driving left of center in a hazardous zone in violation of R.C. 4511.31.

2a. On August 12, 1985, defendant appeared with the same counsel he now has in respect to each complaint and in each case entered a plea of not guilty; and in respect to each charge defendant was released on his own recognizance by Judge Moon.

b. In connection with defendant's arraignment on the DWI charge, Judge Moon conducted the hearing and inquiry required by R.C. 4511.191 (K) and made these findings:

(1) the defendant REFUSED to consent to a chemical test of his blood, breath, or urine to determine alcohol content; and

(2) that defendant had:

a. no previous conviction under R.C. 4511.19 and/or municipal ordinance for an alcohol-related offense;

b. a valid operator's license at the time of his arrest;

c. caused no serious harm or death to another person;

d. not failed to appear when initially summoned; and

e. that his continued driving would not be a threat to public safety. Accordingly —

(3) the court ordered that defendant's license be returned to him.

c. In each case defendant, also on August 12, 1985, in writing waived the requirement that his case be tried or preliminary hearing held within the time limits prescribed by R.C. 2945.71. In addition on this same day, in each case, he demanded in writing a jury trial.

3a. Thereafter, typical discovery was had and on September 3, 1985 defendant filed a motion in each case requesting an order suppressing "all statements made by the accused to any law enforcement agent" in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution.

b. In a supporting memorandum it was indicated that defendant had not received, prior to police interrogation, the warnings required by *Miranda* v. *Arizona* (1966), 384 U.S. 436, 36 O.O. 2d 237; that the officer's conduct substantially interfered with his right to counsel and to be free from self-incrimination; and that any admissions such officers may have obtained were not voluntarily given. Several United States Supreme Court decisions are cited but no reference is made to any specific act which defendant could legitimately claim was offensive to his rights.

4. On June 12, 1986, the state filed a motion requesting dismissal of each of the mentioned motions to dismiss by reason of "defendant's failure to state with particularity the grounds upon which his motion is made and failure to set forth the relief or order sought," citing *State* v. *Griggy* (1982), 1 Ohio Misc. 2d 16, 1 OBR 457, 440 N.E. 2d 74.

5. On November 26, 1985, Judge Moon filed a judgment entry overruling the motions to suppress and finding that the motion does "not contain factual allegations justifying relief," and citing *United States* v. *One 1965 Buick* (C.A. 6, 1968), 392 F. 2d 672, 678; and *Solon* v. *Mallion* (1983), 10 Ohio App. 3d 130, 10 OBR 156, 460 N.E. 2d 729; and *State* v. *Griggy, supra*. This entry contained a final paragraph reading:

"At pre-trial November 15, 1985 defendant was given leave to file an amended or supplemental motion to suppress on or before November 25, 1985 in default of which both counsel and the Court agreed that the foregoing Motion be dismissed without further hearing."

6. On November 19, 1985, it is stipulated that these cases were

assigned for jury trial in the Municipal Court of Port Clinton on Thursday, June 17, 1986 at 9:00 a.m.

7. On March 18, 1986, defendant's counsel, in the general division of the Common Pleas Court of Franklin County in No. C 85CR-09-2500 before the Honorable Clifford E. Rader, accepted the defense of one Vernel Wade, an incarcerated accused charged with two counts of forcible rape and other felony charges which were that day assigned for jury trial on Wednesday, June 16, 1986 at 9:00 a.m. It is conceded that the speedy trial statute, R.C. 2945.71, specifying the time within which trial must be held required Judge Rader to cause Wade's trial, in the absence of any waiver, to be begun within ninety days of his arrest unless bail be granted.

8. On May 28, 1986, defendant moved for a continuance showing his Franklin County obligation and in a memorandum of support asserted that: "Since the Franklin County case involves felony crimes, those cases under the Ohio Rules of Criminal Procedure would take priority."

9. On May 20, 1986, Judge Moon overruled defendant's motion for continuance with a judgment entry reading:

"Defendant's Motion for Continuance of the June 17, 1986 jury trial date is hereby overruled.

"The Franklin County felony cases were set for trial by notice issued March 18, 1986. The Port Clinton Municipal Court matters were set for trial by notice issued November 19, 1985 and therefore having priority over the Franklin County matter. Further, the conflict would have become apparent to Defendant's counsel upon the issuance of the Franklin County

notice March 18, 1986, and no continuance was sought in this Court until May 28, 1986. Said Motion is not timely filed here. [*Alex N.*] *Sill Co.* v. *Fazio* * * * [(1981), 2 Ohio App. 3d 65, 2 OBR 72, 440 N.E. 2d 807,] and M.C. Sup. R. 16."

This chronological recital occurred in this background of fact developed in this hearing. The Municipal Court of Port Clinton exercises jurisdiction throughout Ottawa County and Judge Paul C. Moon is its single resident judge. In recent years it has never failed to receive and dispose of more than seven thousand cases per year. Because of the county's vacationland facilities filings reach their peak during the summer months. The defendant is an Air-Force veteran who is an Ohio lawyer who practices in Columbus, Ohio. The offenses with which defendant is charged occurred in circumstances presenting several unique aspects by reason of which on or about November 19, 1985 a plea bargain was struck with counsel for the state whereby a plea of reckless operation would be acceptable to the prosecuting attorney and this fact was presented to Judge Moon who, upon discovering that defendant had refused to be tested for the presence of alcohol in his body fluids, declined to receive the bargained-for plea. Further, at the time the charges were assigned for jury trial Judge Moon departed somewhat from his court's Local Rule 23 in effect since April 1, 1984, whereby jury trials, whether civil or criminal, are given a primary date, and contemporaneously therewith, are also given a contingency trial date.[1] He did this at the request of defendant's counsel who insisted no contingency date would be needed and that defen-

---

[1] (The text of Local Rule 23 duly adopted by the Port Clinton Municipal

Court, as in effect since April 1, 1984, is as follows:

dant would be present on June 17, 1986, the day assigned.

Thereafter it appears that Judge Rader in March 1985 called upon Mr. DeBacco, defendant's counsel, to defend an extremely difficult case in counsel's home county of Franklin which required a trial date within ninety days. In explanation of why he did not seek a continuance promptly after March 18, 1985 because of Judge Rader's problem but waited until May 28, 1985 in which to request a continuance, counsel explains that he initially was convinced his client would be found insane and no trial would occur. When this belief did not materialize and it appeared trial would be required, Mr. DeBacco filed his motion for continuance. Then the Franklin

"1. The Assignment Clerk of the Port Clinton Municipal Court shall schedule or assign cases for jury trial upon a *primary* and *contingency* basis.

"2. In each case involving a demand for jury, whether civil or criminal, a *primary* trial date shall be assigned to said matter upon receipt of said jury demand.

"3. Contemporaneously with the assignment of a *primary* trial date, a *contingency* trial date may also be scheduled with written notice of each being sent to the prosecutor and defendant or his counsel, in a criminal matter, and plaintiff and defendant or their counsel, in a civil matter.

"4. Counsel and parties shall be prepared to try a case, on a contingency basis, should the primary trial on that date be cancelled prior to 4:00 p.m. on the next regular court date preceeding its trial date. Should a primary trial be cancelled after 4:00 p.m. on the next regular court date preceding its trial date the contingency trial *should not be required to go forward.*

"5. Should a primary trial, to which a second or third trial is contingent, not be cancelled, the contingency trial may be reassigned by the assignment clerk, on a contingency basis to a date not sooner than forty-eight (48) hours from the date of reassignment or rescheduling and counsel and parties shall be prepared to go forward after assignment, should the primary trial be cancelled prior to 4:00 p.m. on the next regular court date preceding its trial.

"6. Should a conflict in trial schedules arise resulting from the scheduling or assignment of trials by the assignment clerk of this court, counsel and/or parties must notify the assignment clerk immediately by telephone, upon receipt of the primary or contingency assignment and then notify the assignment clerk in writing within forty-eight (48) hours of the receipt of said assignment in this court detailing the reason for the conflict, the name of the court, the docket and case number, the caption of the case and the date of said *prior* assignment. Upon said notification, *in writing,* the Assignment Clerk may reschedule the jury trial, either contingency or primary.

"7. Should a party cancel, continue or dismiss a jury trial and the Court is unable to notify the individual jurors not to appear, the costs of appearance of said jurors shall be assessed to the party who has cancelled the trial. See Local Rule Nine.

"8. Should a party cancel, continue or dismiss a jury trial necessitating the investment of time by personnel of this Court in notifying said jurors not to appear on the previously scheduled jury date, the party cancelling, continuing or dismissing the jury trial shall be assessed a fifty dollar ($50.00) fee as a consequence of said cancellation and the necessity of investment of time by personnel of this Court in notifying the prospective jurors not to appear on the date in question. The party cancelling, continuing or dismissing a jury trial shall have the option, in the event of said cancellation, continuance or dismissal, to obtain the list of prospective jurors scheduled to appear for the trial cancelled, continued or dismissed, and shall have the option of contacting said jurors personally or through his or. her law office in order to apprise the jurors of the cancellation of said jury trial. The costs for payment of any jurors who appear on the date of the cancelled, continued or dismissed jury trial shall be assessed to the party who cancelled, continued or dismissed the jury trial." (Emphasis added.)

County case was terminated on June 16, 1986 with the acceptance of a negotiated plea! Unfortunately, in the view of this court, counsel did not present to Judge Moon a full explanation of his situation and/or any statement from Judge Rader or his bailiff requesting accommodation but acknowledging Judge Moon's priority by virtue of C.P. Sup. R. 7(B) and M.C. Sup. R. 16(B), both rules titled "Conflict of Trial Court Assignment Dates, Continuances and Engaged Counsel." M.C. Sup. R. 16(B) reads:

"Conflict of trial assignment dates. When a continuance is requested for the reason that counsel is scheduled to appear in another case assigned for trial on the same date in the same or another trial court of this state, the case which was first set for trial shall have priority and shall be tried on the date assigned. Criminal cases assigned for trial have priority over civil cases assigned for trial. The granting of any other request for continuance of a scheduled trial is a matter within the discretion of the trial court."

C.P. Sup.R. 7(B) does not contain the last sentence in M.C. Sup. R. 16(B); otherwise, the language of the two rules is identical. It is quite clear that Ohio court rules nowhere support defense counsel's statement made in his memorandum in support of his motion for continuance that: "Since the Franklin County case involves felony crimes, those cases under the Ohio Rules of Criminal Procedure would take priority."

Nor does this court disagree with counsel's argument that discretion granted by rule or law means a sound discretion under the circumstances. Discretion, as this writer perceives it, refers to those situations where as between two or more alternatives, the most correct resolution cannot be clearly foreseen. When, however, a judge has not been fully informed of the circumstances, this court is loath indeed to find either that no sound discretion was exercised or above all, abused.

Defense counsel now argues that Judge Moon's refusal to accept the plea bargain because of his policy not to accept them where DWI is charged and the accused has not submitted to a properly requested chemical test indicates a predisposition to judgment unfavorable to defendant. He cites *Sabin* v. *Bur. of Motor Vehicles* (1986), 26 Ohio Misc. 2d 8, 26 OBR 281, 498 N.E. 2d 511, decided by this judge in this court, in respect to another affidavit of prejudice because Judge Moon had announced prior to hearing a license suspension appeal, that he *never* granted the driving privileges authorized for convicted DWI offenders by R.C. 4511.191(F) which requires the judge to determine, upon appeal by a person whose license is suspended "* * * whether his employment is of such a nature that his ability to continue in the employment would be seriously affected if the suspension otherwise required under this section is imposed."

It is true that in *Sabin*, Judge Moon was found disqualified only because of a forthright disagreement with the relief provided in the statute for any person the legislation was designed to relieve. Nevertheless Judge Moon graciously accepted this court's judgment and *Sabin* was concluded by another judge.

But this case is different in that Crim. R. 11(D) applying to criminal prosecutions in all Ohio trial courts reads:

*"Misdemeanor cases involving serious offenses.* In misdemeanor cases involving serious offenses the court may refuse to accept a plea of guilty or no contest, and shall not accept such plea without first addressing the de-

fendant personally and informing him of the effect of the pleas of guilty, no contest, and not guilty and determining that he is making the pleas voluntarily. Where the defendant is unrepresented by counsel the court shall not accept a plea of guilty or no contest unless the defendant, after being readvised that he has the right to be represented by retained counsel, or pursuant to Rule 44 by appointed counsel, waives this right."

Also, Crim. R. 11(C)(2) and 11(E), respectively, specifically authorize trial judges to refuse a plea of guilty or no contest in felony cases and in misdemeanor cases involving petty offenses.

Consequently, this court holds that for any human reason deemed salutary by any Ohio judge which is not based on personal enmity, hostility, passionate prejudice, or unreasonable bias — no aspect of which is shown here — he or she may refuse to accept a plea of guilty or no contest; or any such plea presented as a result of a plea bargain and be upheld in such refusal. If from the disposition of thousands of cases Judge Moon has arrived at the conclusion that rare indeed is that individual entitled to a plea bargain, who refuses, in appropriate circumstances, to take the tests provided for determination of alcohol and drugs in body fluids, this court is unwilling to question his judgment and certainly cannot find it contrary to reason or resting upon an ignoble basis. The court has considered the cases cited by defendant but can discern no help in them for defendant's position.

Concerning plea bargains in general this court concurs with the views expressed by Judge Victor in *Akron* v. *Ragsdale* (1978), 61 Ohio App. 2d 107, 109, 15 O.O. 3d 107, 108, 399 N.E. 2d 119, 120-121, where he writes:

"Plea bargaining is a recognized fact of life in today's criminal justice system. It is accepted and approved as a method of disposing of criminal cases. *State* v. *Griffey* (1972), 29 Ohio App. 2d 246, 250, reversed on other grounds 35 Ohio St. 2d 101. The A.B.A. Standards, Pleas of Guilty, Sections 3.1 and 3.3 (approved draft, 1968) declare that a prosecuting attorney may engage in plea negotiations 'where it appears that the interest of the public in the fair administration of criminal justice would be served.'

"We recognize the need and thereby approve of the prosecution entering into meaningful and good faith plea negotiations with defense counsel. Our query is, however, who shall be the final arbiter of what is in the best 'interest of the public in the fair administration of criminal justice,' the prosecutor or the court.

"We agree with the defendant that *the prosecution's recommendations ought not to be summarily rejected, and that the trial judge ought to exercise a sound discretion before refusing to accept or departing from such recommendations. Nevertheless, we believe the final judgment on whether a plea bargain shall be accepted must rest with the trial judge.* We recognize that such judgment may be exercised erroneously and the defendant has cited authority to that effect. See *United States* v. *Ammidown* (C.A.D.C. 1974), 497 F. 2d 615; *United States* v. *Hastings* (E.D. Ark. 1977), 447 F. Supp. 534.

"*When a recommended plea bargain is rejected, the court ought to state reasons for his rejection.* In some cases, however, the facts themselves speak so eloquently that no statement by the judge is required." (Emphasis *sic.*)

Moreover, this court perceives that so long as we enjoy constitutional rights, plea bargaining will be a fact of life, for in countless cases no other

disposition makes practical sense. In this case the facts speak with enough eloquence that this court finds no fault with Judge Moon for not entering them of record.

Faced with Mr. DeBacco's dilemma in March and May, what would most competent attorneys do? This court does not fault him greatly for filing the affidavit of prejudice as a desperation measure, believing many competent attorneys would have done so in like circumstances rather than send substitute counsel who can rarely have the full knowledge the chosen and original counsel had. In the nature of a private reprimand this court does fault Mr. DeBacco for not requesting in March a contingency date in view of Judge Rader's problem and also for failure to more fully inform Judge Moon of his problem when he filed his May 28 motion requesting a continuance.

It appearing, however, that no one has suffered any irreparable damage, these cases will be remanded to the Municipal Court of Port Clinton for disposition in the usual course. Surely, if counsel deem it appropriate for particular reasons, they may ask Judge Moon to reconsider the rejected plea bargain or consider any other disposition which he may, in the exercise of his judgment, determine to be proper.

Finally, there is no indication that Mr. DeBacco has so many clients that he cannot serve all of them properly without undue delay such that either of the identically worded Rules of Superintendence appearing at C.P. Sup. R. 7(B) and/or M.C. Sup. R. 16(B) need be resorted to to require substitute counsel.

*Judgment accordingly.*

HITCHCOCK, J., of the Court of Common Pleas of Paulding County, sitting by assignment.