The STATE of Ohio, Appellee,

v.

RIDGEWAY, Appellant.

[Cite as *State v. Ridgeway* (1990), 66 Ohio App.3d 270.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 56875.

Decided April 23, 1990.

*John T. Corrigan,* Prosecuting Attorney, and *George J. Sadd,* Assistant Prosecuting Attorney, for appellee.

*Daniel D. Domozick,* for appellant.

AUGUST PRYATEL, Judge.

Defendant, Anthony Ridgeway,[1] was indicted by the Cuyahoga County Grand Jury in case number 226,888 on five counts, *viz.,* one count of violation of R.C. 2905.01, kidnapping, and four counts of violating R.C. 2907.02, rape. After a jury trial, defendant was found guilty of kidnapping and two counts of

---

1. Also indicted were three codefendants, Daniel Ridgeway, David Ridgeway and Carl Fluellen.

rape. Defendant was found not guilty on the remaining two counts. On October 14, 1988, defendant was sentenced to a term of nine to twenty-five years on count one and a term of five to twenty-five years on each count of rape. The sentences for the rape counts are to run concurrently to each other, but consecutively to the sentence for kidnapping. This court granted defendant leave for a delayed appeal.

The relevant facts follow:

On April 8, 1988, at approximately midnight, Lolita Patrick, the victim, walked from her sister's apartment to use a pay phone a few blocks away. Patrick then went to the Blue Moon Lounge to look for her mother and another friend.

As she arrived at the bar, four men, including defendant, were being ejected from the bar for fighting. Upon not finding her mother or her friend in the bar, Patrick began walking back to her sister's apartment. As she was walking, Patrick was approached by a vehicle containing the four men who had been ejected from the bar. The men inside the vehicle were shouting rude and suggestive insults at Patrick. Defendant then jumped out of the automobile and grabbed Patrick, forcing her into the automobile. She was driven to the apartment of Daniel Ridgeway, approximately fifteen to twenty minutes away, which she was forced to enter.

Inside the apartment, defendant struck Patrick and removed her clothing. She was forced to perform oral sex on defendant. When she resisted, by biting defendant on the penis, defendant held a knife to her throat. She was forced to have intercourse with defendant and other members of the group. Finally, Patrick was able to escape when she was left alone in a bedroom.

After realizing Patrick had escaped, defendant went to the apartment building's security office, where he reported the apartment had been burglarized. While he was in the security office, Patrick also arrived at the security office and indicated she had been raped and identified defendant.

At the close of evidence, defendant was found guilty of two counts of rape and one count of kidnapping. Before sentencing, a plea bargain was reached which would allow the court to combine the case *sub judice* with case No. 57948, in which defendant had been indicted on twelve counts of rape and robbery. The plea would have allowed defendant to serve sentences in both cases concurrently. However, defendant maintained his innocence in case No. 57948, claiming he was pleading guilty only to avoid doing time. The court was unwilling to accept the plea and sentenced defendant on case No. 226,888 alone. The state then dismissed case No. 57948.

Defendant's first assignment of error follows:

"The trial court erred by refusing to admit evidence that the victim had gonorrhea at the time of the rape thus violating R.C. Sec. 2907.02(D) and appellant's Sixth Amendment rights."

Defendant's first assignment of error lacks merit.

Defendant contends the court erred by refusing to admit evidence that Patrick had gonorrhea at the time of the rape. Defendant argues he also could have presented evidence that he did not have gonorrhea, but that David Ridgeway did. This, defendant argues, would tend to prove defendant did not rape the victim. Defendant also contends he would have introduced medical evidence establishing the probability of contracting gonorrhea from intercourse. Defendant's arguments are unpersuasive.

R.C. 2907.02(D) provides in pertinent part as follows:

"Evidence of specific instances of the victim's sexual activity, opinion evidence of the victim's sexual activity, and reputation evidence of the victim's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, *or disease*, or the victim's past sexual activity with the offender, and *only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value.*" (Emphasis added.)

This court has previously held as follows:

"The purpose of R.C. 2907.02(D), the so-called rape shield law, is to prevent introduction of evidence intended to impeach the victim's credibility where its probative value is outweighed by its prejudicial effect. *State v. Gardner* (1979), 59 Ohio St.2d 14 [13 O.O.3d 8, 391 N.E.2d 337]. As such, a trial court must exercise its discretion in balancing the two factors. *Davis v. Alaska* (1974), 415 U.S. 308 [94 S.Ct. 1105, 39 L.Ed.2d 347]; *State v. Gardner, supra.*

"In *Gardner*, the supreme court expressly rejected the 'supposed relevancy' that the victim's prior unchastity indicates the likelihood of her having given consent. In fact, the court indicated that evidence of past sexual conduct has no bearing at all on either her credibility or the issue of consent. *State v. Gardner, supra* [59 Ohio St.2d], at 18 [13 O.O.3d at 10, 391 N.E.2d at 341]." *State v. Wilson* (Oct. 2, 1980), Cuyahoga App. No. 41773, unreported.

In the case *sub judice*, defendant claims the absence of gonorrhea in him indicates he did not rape the victim. However, the Court of Appeals for Summit County has previously examined this claim and found as follows:

"We have examined the article appended to [defendant's] petition and do not find that the facts contained therein support [defendant's] theory. The article states that, on the basis of a single study, the researcher estimates that a

male engaging in a single act of sexual intercourse with a gonorrhea infected female has a 20 to 25% chance of becoming similarly infected during the single contact. Conversely, the same estimated statistics indicate that a male having a single sexual contact with an infected female has a 75 to 80% chance of remaining disease free. The article also states that the percentage of infection can be greatly reduced by taking adequate precautionary measures following intercourse. Thus, we question the probative value of the proffered evidence." *State v. Logan* (Nov. 9, 1983), Summit App. No. 11203, unreported, 1983 WL 3912.

Therefore, since testimony concerning the existence of a venereal disease is highly inflammatory and of low probative value, the court did not err in refusing to allow the existence of gonorrhea into evidence.

■ Additionally, R.C. 2907.02(E) provides as follows:

"Prior to taking testimony or receiving evidence of any sexual activity of the victim or the defendant in a proceeding under this section, the court shall resolve the admissibility of the proposed evidence in a hearing in chambers, which shall be held at or before preliminary hearing and *not less than three days before trial,* or for good cause shown during the trial." (Emphasis added.)

Defendant did not raise the issue until the middle of trial at a sidebar conference. Defendant did not attempt to address why he was raising the issue in an untimely fashion. Therefore, the court was under no obligation to admit the evidence.

Accordingly, defendant's first assignment of error is not well taken and is overruled.

■ Defendant's second assignment of error follows:

"The trial court erred by convicting appellant of rape and kidnapping in violation of R.C. Sec. 2941.25."

Defendant's second assignment of error lacks merit.

Defendant contends the counts of kidnapping and rape were committed with a single animus and defendant may not be convicted of both crimes. Defendant argues the kidnapping was merely incidental to the rape. Defendant's argument is unpersuasive.

"The Ohio Supreme Court has set forth the standard for determining whether kidnapping and another offense are subject to separate convictions:

" 'In establishing whether kidnapping and another offense of the same or similar kind are committed with a separate animus as to each pursuant to R.C. 2941.25(B), this court adopts the following guidelines:

" '(a) Where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions;

" '(b) Where the asportation or restraint of the victim subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the underlying crime, there exists a separate animus as to each offense sufficient to support separate convictions.' *State v. Logan* (1979), 60 Ohio St.2d 126, 14 O.O.3d 373, 397 N.E.2d 1345, at the syllabus." *State v. Henry* (1987), 37 Ohio App.3d 3, 9, 523 N.E.2d 877, 883–884.

"The issue, therefore, as discussed in *Logan* in the context of animus, rather than separate commission, is whether 'the movement is substantial so as to demonstrate a significant independence of the other offense.' *Id.* at paragraph two of the syllabus.

"In this regard, a distinction must be made as to whether the kidnapping in violation of R.C. 2905.01(A)(4) is committed by removing the victim from the place where he is found or is committed by restraining him of his liberty. The former is committed separately if the asportation is of a significant distance prior to the arrival at the place of the intended rape; whereas, the latter has relevance only if the restraint of liberty is for a significant period of time prior to the commission of the intended rape." *State v. Moore* (1983), 13 Ohio App.3d 226, 228, 13 OBR 278, 279, 468 N.E.2d 920, 922.

In the case *sub judice*, Patrick was forcibly taken against her will while she was walking on a sidewalk and forced into an automobile. The vehicle was driven across town to an apartment fifteen or twenty minutes away. She was then forced into the apartment. It was not until then that the rapes occurred. Finally, she was still not let go, but rather left in a bedroom of the apartment where subsequently she engineered her escape. The kidnapping began long before the rape and continued after the rape had concluded. The trial court correctly found a separate animus for each crime.

Accordingly, defendant's second assignment of error is not well taken and is overruled.

Defendant's third assignment of error follows:

"The trial court abused its discretion in not complying with the negotiated plea agreement."

Defendant's third assignment of error lacks merit.

Defendant contends the court erred by refusing to accept a plea bargain negotiated between defendant and the prosecutor. Defendant argues the court abused its discretion by refusing to accept the plea despite the fact defendant maintained his innocence. Defendant's argument is unpersuasive.

"Plea bargaining is a recognized fact of life in today's criminal justice system. It is accepted and approved as a method of disposing of criminal cases. *State v. Griffey* (1972), 29 Ohio App.2d 246, 250 [58 O.O.2d 450, 452, 281 N.E.2d 32, 35], reversed on other grounds [ (1973) ] 35 Ohio St.2d 101 [64 O.O.2d 62, 298 N.E.2d 603]. The A.B.A. Standards, Pleas of Guilty, Section[s] 3.1 and 3.3 (approved draft, 1968) declare that a prosecuting attorney may engage in plea negotiations 'where it appears that the interest of the public in the fair administration of criminal justice would be served.'

"We recognize the need and thereby approve of the prosecution entering into meaningful and good faith plea negotiations with defense counsel. Our query is, however, who shall be the final arbiter of what is in the best 'interest of the public in the fair administration of criminal justice,' the prosecutor or the court.

"We agree with the defendant that *the prosecution's recommendations ought not to be summarily rejected and that the trial judge ought to exercise a sound discretion before refusing to accept or departing from such recommendations. Nevertheless, we believe the final judgment on whether a plea bargain shall be accepted must rest with the trial judge.* We recognize that such judgment may be exercised erroneously and the defendant has cited authority to that effect. See, *United States v. Ammidown* (C.A.D.C.1974), 497 F.2d 615; *United States v. Hastings* (E.D.Ark. 1977), 447 F.Supp. 534.

"*When a recommended plea bargain is rejected, the court ought to state reasons for his rejection.* In some cases, however, the facts themselves speak so eloquently that no statement by the judge is required." (Emphasis *sic*.) *Akron v. Ragsdale* (1978), 61 Ohio App.2d 107, 109, 15 O.O.3d 107, 108, 399 N.E.2d 119, 120–121. See, also, *State v. Menucci* (1986), 33 Ohio Misc.2d 15, 20, 514 N.E.2d 758, 763.

Crim.R. 11(C) provides in pertinent part as follows:

"(2) In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept such plea without first addressing the defendant personally * * *[.]"

In the case *sub judice*, the following colloquy took place:

"THE COURT: Mr. Ridgeway, do you have anything to say on your behalf before I proceed to sentencing?

"DEFENDANT: Yes, your Honor. I didn't plead. I pled guilty to avoid time. I'm innocent.

"THE COURT: I'm sorry. Mr. Stanley, I'm thinking I had already read—I have not taken the plea, but your client just told me he's pleading guilty because of the time, not that he is guilty, excuse me, he's pleading guilty but he's innocent. I don't want to hear that. He's either going to plead guilty or he's not. You better discuss this with your client before I take this plea. I don't take that kind of a plea.

"MR. STANLEY: Well, Judge, I'll talk to him about it. It's been our position all along he was innocent.

"THE COURT: I'm not going to accept the plea. Either he's going to plead or not going to plea."

The court was not required to accept the plea. The judge clearly explained his reasons for not accepting the plea. The court did not want to allow defendant to later appeal the plea as involuntary. Defendant stated he was making the plea to avoid doing time. It was not an abuse of the court's discretion not to accept the plea.

Defendant had already been found guilty. Since defendant would not plead his guilt in the other case, the court properly sentenced defendant in the case *sub judice*. In addition, the state subsequently dismissed case No. 57948, making error, if any, harmless.

Accordingly, defendant's third assignment of error is not well taken and is overruled.

*Judgment affirmed.*

DYKE, P.J., and FRANCIS E. SWEENEY, JJ., concur.

AUGUST PRYATEL, J., retired, of the Eighth Appellate District, sitting by assignment.